**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**LABRITTANY HASSEN**                    **CASE NO. 3:23-CV-01027**

**VERSUS**                                         **JUDGE TERRY A. DOUGHTY**

**CHRIS BOWMAN ET AL**                **MAG. JUDGE KAYLA D. MCCLUSKY**

**MEMORANDUM RULING**

Pending before the Court are motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) filed by Defendants the City of Ruston, Kayla Loyd, Jordan Richard, Stephen Rogers, Henry Wood, A Plus Medical LLC, Chris Bowman, Hannah Bowman, Taylor Schutzman, Whitney Walker, Dr. Ugochukwu Nwude, Dr. James Belue, and Hazel Woods.  [Doc. Nos. 7, 27, 39, 41].  The motions are opposed.  [Doc. Nos. 45, 56, 59, 64].

For the reasons set forth herein, the motion of the City, Loyd, Richard, Rogers, and Wood [Doc. No. 7] is **GRANTED IN PART** and **DENIED IN PART**, the motion of the Bowmans, A Plus Medical LLC, Schutzman, and Walker [Doc. No. 27] is **GRANTED**, the motion of Dr. Nwude [Doc. No. 39]  is **GRANTED IN PART** and **DENIED IN PART, as moot**, and the motion of Dr. Belue and Woods [Doc. No. 41] is **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND & PROCEDURAL HISTORY**

Plaintiff LaBrittany Hassen ("Hassen") filed the instant complaint ("the Complaint") on August 2, 2023.  Complaint [Doc. No. 1].  The Complaint names A Plus Medical LLC ("A Plus Medical"); Chris Bowman ("C. Bowman"); Hannah Bowman ("H. Bowman"); Taylor Schutzman ("Schutzman"); and Whitney Walker ("Walker") (collectively "the A Plus Medical Defendants"); Kayla Loyd ("Loyd"); Jordan Richard ("Richard"); Stephen Rogers ("Rogers"); and Henry Wood

("Wood") (collectively "the Defendant Officers"); the City of Ruston ("the City");[1] James Belue ("Belue"); Hazel Woods ("Woods"); Ugochukwu Nwude ("Nwude"); Baylee Gray ("Gray"); and Northern Louisiana Medical Center as defendants.  [Doc. No. 1, pp. 2-3].  The Defendant Officers are sued in both their official and individual capacities, while the remaining individual Defendants are sued only in their individual capacities.  *Id.*  Hassen seeks injunctive relief and damages under 42 U.S.C. § 1983 for alleged violations of the Fourth Amendment, Fourteenth Amendment, and Louisiana Constitution.  *Id.* at pp. 6-17.  She also seeks relief for Defendants' alleged failure to intervene, false arrest, abuse of process, intentional infliction of emotional distress ("IIED"), defamation, civil conspiracy, and negligent hiring.  *Id.* at pp. 13-14, 17-27.

On August 2, 2022, Hassen arrived at the Michael Brooks Family Clinic ("the Family Clinic")[2] in Ruston, Louisiana, where she worked as a nurse.  *Id.* at p. 3.  At the start of the day, she had an appointment with a family nurse practitioner to conduct annual labs, refill her anxiety medications, and discuss persistent headaches she had been suffering.  *Id.*  After the appointment, Hassen returned to work and saw patients until approximately 12:10 p.m., at which point she took a lunch break.  *Id.*  Hassen returned to the Family Clinic around 1:10 p.m. and continued to see patients.  *Id.* at pp. 3-4.

At an unspecified time during the day, Hassen's co-workers Schutzman and Walker spoke with the Defendant Officers.  *Id.* at p. 5.  Schutzman told the Defendant Officers that Hassen had choked her son and indicated she "was not going to do suicide by cop."[3]  *Id.*  Walker independently

---

[1] The Complaint names "the City of Ruston Police Department" as a defendant.  *Id.*  This entity is properly named as the City of Ruston.  *See* [Doc. No. 5].

[2] A Plus Medical does business under this name.

[3] While this statement is in the negative, the undersigned understands it to have been made in a context indicating Hassen's willingness to engage in violence.  At the least, Schutzman and Walker reported the statement to the Defendant Officers as part of their investigation into whether Hassen was a risk to herself and the community.

corroborated these statements and added that Hassen had made threats to harm herself and her children three to four months prior. *Id.*

At approximately 4:10 p.m., Hassen was notified that C. Bowman, owner of the Family Clinic, would like to see her in his office. *Id.* at pp. 3-4. Hassen reported to the office, where the Defendant Officers awaited her. *Id.* at p. 4. Loyd began questioning Hassen, asking whether she had homicidal thoughts or plans. *Id.* Hassen indicated that she did not. *Id.* Nonetheless, Hassen was informed that she was being taken to the local ER for a mental evaluation concerning comments she had allegedly made. *Id.* Rogers also asked if Hassen were armed, to which Hassen responded that she was not, but there was a registered firearm in her purse in her office. *Id.* At this point, Hassen was escorted out of the building to an awaiting ambulance, which drove her to Northern Louisiana Medical Center, arriving at around 4:32 p.m. *Id.*

Rogers and Loyd met Hassen upon her arrival and escorted her to Dr. Nwude, an E.R. physician, and Gray, an E.R. nurse, for evaluation. *Id.* Nwude and Gray asked whether Hassen had homicidal or suicidal thoughts, which she again denied. *Id.* "[A]t the request of [Rogers,]" Nwude executed a Physician's Emergency Certificate ("PEC") concerning Hassen. *Id.* Hassen was then transported to Serenity Springs, a nearby mental health facility, where she remained for three days. *Id.* at p. 5. During this stay, Dr. Belue, a local physician and the Parish coroner, examined Hassen and executed a Coroner's Emergency Certificate ("CEC"). *Id.*

The statements Schutzman and Walker made to the Defendant Officers were reported to the Louisiana State Board of Nursing ("LSBN"). *Id.* Schutzman and Walker also submitted written statements to the LSBN. *Id.* The LSBN thereafter commenced an investigation into Hassen. *Id.* During the pendency of the investigation, Hassen's nursing license was suspended,

and she was suspended from her part-time position at the Elara Caring Hospice.  *Id.*  The LSBN ultimately reinstated Hassen's license after completion of its investigation.  *Id.*

Hassen filed the Complaint on August 2, 2023.  [Doc. No. 1].  On October 13, 2023, the City and Defendant Officers filed their motion to dismiss, in which the Defendant Officers invoke qualified immunity and argue the official capacity claims against them should be dismissed, while the City asserts Hassen has failed to state a municipal liability claim.  [Doc. No. 7].  The A Plus Medical Defendants filed a motion to dismiss on November 21, 2023, in which they argue that (1) there are no substantive allegations against H. Bowman, (2) the remaining individuals are incapable of being subject to § 1983 liability, and (3) Hassen has failed to plead any state-law claims.  [Doc. No. 27].  The next week, on November 28, 2023, Dr. Nwude filed his own motion, asserting that the claims against him sound in medical malpractice and thus require evaluation by a medical review board prior to civil litigation.  [Doc. No. 39].  That same day, Dr. Belue and Woods filed a motion to dismiss, arguing that, (1) Hassen has failed to state claims against them in their individual capacities, (2) they are entitled to various statutory immunities under Louisiana law, and (3) this court lacks jurisdiction over any remaining state-law claims.  [Doc. No. 41].

Hassen filed her opposition to the City and Defendant Officers' motion on November 29, 2023, [Doc. Nos. 45], which those movants responded to on December 4, 2023.  [Doc. No. 46].  Hassen then filed oppositions to the A Plus Medical Defendants' motion on January 11, 2024, [Doc. No. 56], and Dr. Nwude's motion on January 18, 2024.  [Doc. No. 59].  Hassen filed an opposition to Dr. Belue and Woods' motion on January 26, 2024.  [Doc. No. 64].  On February 2, 2024, the A Plus Medical Defendants, Dr. Belue, and Woods replied to Hassen's oppositions.  [Doc. No. 69]; [Doc. No. 70].  Shortly thereafter, on February 8, 2024, Dr. Nwude replied to the opposition concerning his motion. [Doc. No. 71].

Briefing is complete. The Court is prepared to rule.

**I.        Law & Analysis**

**a.        *Federal Rule of Civil Procedure 12(b)(1)***

The Federal Rules of Civil Procedure sanction dismissal where the presiding court lacks subject-matter jurisdiction.[4]  FED. R. CIV. P. 12(b)(1).   A Rule 12(b)(1) motion should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of her claim entitling her to relief.  *In re FEMA Trailer Formaldehyde*, 668 F.3d at 287.

**b.        *Federal Rule of Civil Procedure 12(b)(6)***

The Federal Rules of Civil Procedure also sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *Twombly*, 550 U.S. at 556.  "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim," *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010), but "[t]hreadbare recitals" of those elements "supported by mere conclusory statements" are insufficient to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678 (2009).  Factual pleadings that are "merely consistent with" a defendant's liability fall "short of the line between possibility and plausibility."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).  All well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff, *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007), although

---

[4] The federal courts have limited jurisdiction and cannot adjudicate claims absent a statutory conferral of jurisdiction.  *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012).

courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

While "the natural focus [of analysis on a motion to dismiss is] on the allegations of the operative pleading, the movant has the burden" to support his motion. *West v. Consol. Gov't of Lafayette*, No. 21-4431, 2022 WL 2033335, at *9 (W.D.La. May 13, 2022) (citing *Newton v. Bank of Am., N.A.*, No. 19-CA-797, 2019 WL 6048000, at *2 (W.D.Tex. Aug. 29, 2019)), *report and recommendation adopted* 2022 WL 2033341 (W.D.La. June 3, 2022). "When the movant presents 'no argument or authority for the plaintiffs to refute or [the] Court to consider,' the movant has failed to carry its burden." *Id.* (citing *#1 Fan Co., LLC v. Pepco Licensed Prods., Inc.*, No. SA-09-CA-1029, 2011 WL 13269165, at *2 (W.D.Tex. Mar. 16, 2011)).

## II.        Claims Against H. Bowman and Woods

H. Bowman argues that because "there are no substantive factual allegations" made against her, she should be dismissed from the instant action. [Doc. No. 29, p. 6]. Woods makes a similar argument. [Doc. No. 41-1, p. 8].

A review of the Complaint confirms that there are no substantive allegations implicating H. Bowman. In fact, the only time the pleadings mention H. Bowman is when she is named as a Defendant. [Doc. No. 1, p. 2]. The Complaint is also devoid of any meaningful allegations concerning the conduct of Woods. As with H. Bowman, the only mention of Woods in the pleadings is when she is named as a Defendant. *Id.* As there are no allegations concerning the conduct of H. Bowman or Woods, it would be inappropriate to find that Hassen has pleaded a plausible claim against either of them.[5]

---

[5] Hassen "concedes that she failed to include allegations pertaining to [H. Bowman's] involvement in the deceitful actions that led to the violations of Plaintiff's civil rights." [Doc. No. 56-1, p. 21]. Hassen also "concedes that she unintentionally left out information concerning [Woods]." [Doc. No. 64, p. 15]. Plaintiff indicates that she hopes to amend her pleadings to correct these deficiencies. *See* [Doc. No. 56-1, pp. 21-22]; [Doc. No. 64, pp. 15-16].

Accordingly, H. Bowman and Woods' motions [Doc. Nos. 27, 41] are granted, and all claims against these Defendants are dismissed with prejudice.

## III.      Official Capacity Claims

Hassen has sued the Defendant Officers in both their official and individual capacities. [Doc. No. 1, p. 2].  These Defendants argue that the official-capacity claims brought against them should be dismissed as redundant of the claims lodged against the City.  [Doc. No. 7-1, p. 27].

In actions where a defendant-official is sued in both his individual and official capacities, and a municipality is also sued, "there potentially exists an overlapping cause of action" whereby "[t]he official-capacity claims and the claims against the governmental entity essentially merge." *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000).  This is because claims against defendant-officials in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690 n.55 (1978)); *see also Jones v. City of Houston*, 756 F.App'x 341, 346 n.2 (5th Cir. 2018) ("We treat suits against municipal officials in their official capacities as suits against the municipality itself.").  Such claims should be treated as a suit against the government entity "[a]s long as [the entity] receives notice and an opportunity to respond."  *Graham*, 473 U.S. at 166.[6]

Here, Rogers, Wood, Loyd, and Richard are all sued in their official capacities.  All of these Defendants are agents of the City, which is also a named Defendant in the instant action.  The City is on notice of, and able to respond to, the official-capacity claims.  Therefore, the duplicative

---

Indeed, on January 26, 2024, Hassen filed a motion to amend her pleadings.  [Doc. No. 64].  However, on February 22, 2024, the motion was stricken from the record as deficient.  [Doc. No. 73].  Hassen has made no subsequent efforts to amend her pleadings.

[6] This is relevant because "an award of damages against an official in his personal capacity can be executed only against the official's personal assets, [but] a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."  *Id.*

official-capacity claims against Rogers, Wood, Loyd, and Richard are dismissed, leaving the City in their place.[7]

Accordingly, Rogers, Wood, Loyd, and Richard's motion [Doc. No. 7] is granted to the extent it seeks dismissal of the official capacity claims brought against them.

## IV.   Claims Against Dr. Nwude

Dr. Nwude is allegedly liable under 42 U.S.C. § 1983 for unreasonable seizure and violations of Hassen's due process and equal protection rights, as well as for civil conspiracy and IIED.  [Doc. No. 1, pp. 10-13, 20, 23].[8]  He asserts that these claims all sound in medical malpractice and, thus, must be submitted to a medical review panel before Hassen may pursue civil litigation.  [Doc. No. 39].  Hassen counters that the claims against Dr. Nwude are not subject to evaluation by a medical review panel.  [Doc. No. 59-1].

Louisiana's Medical Malpractice Act ("LMMA") generally requires "[a]ll malpractice claims against health care providers" to "be reviewed by a medical review panel."  LA. REV. STAT. § 1231.8(A)(1)(a).  The LMMA also dictates that "[n]o action against a health care provider . . . may be commenced in any court before the [plaintiff's] complaint has been presented to a medical review panel[.]"  *Id.* at § 1231.8(B)(1)(a)(i).   In other words, a claim sounding in medical malpractice is subject to dismissal if the claim has not first been presented to a medical review panel.  *LaCoste v. Pendleton Methodist Hosp., LLC*, 966 So.2d 519, 523 (La. 2007).  Federal courts

---

[7] Hassen "recognizes that where [a] government entity itself is a defendant, claims against the [entity's agents] in their official capacities may be determined to be redundant and appropriate for dismissal."  Opposition to the City et al's M/Dismiss [Doc. No. 45-1, p. 28].  However, she requests that this court retain the official-capacity claims "until the determination of [the instant motion], at which time Plaintiff will move to dismiss any redundant claims, while maintaining the action against the government entity itself."  *Id.*  Considerations of judicial economy counsel against recommending Hassen's proposed course of action and instead disposing of this issue immediately.

[8] The undersigned notes that Dr. Nwude is specifically named only in Hassen's claim for an alleged substantive due process violation.  *See id.* at p. 11.  The pleadings associated with the remaining claims name either other Defendants as liable or generally state that "Defendants" are liable.  *See id.* at pp. 11-13, 20, 23.  Nevertheless, Hassen asserts in her opposition memorandum that Dr. Nwude is liable for all of the above-mentioned claims.  [Doc. No. 59-1, p. 8-9].

in Louisiana have found that the LMMA applies to claims pending before them. *See, e.g.*, *Blalock v. Union Pac. R.R. Co.*, 19-CV-01160, 2021 WL 4272745, at *1-4 (W.D. La. Aug. 31, 2021) (finding amendment to add healthcare provider as defendant futile as requirements under § 1231.8(A)(1) not satisfied), *report and recommendation adopted* 2021 WL 4260117 (W.D. La. Sep. 20, 2021).

Whether a claim sounds in medical malpractice is a question of law. *Lemelle v. Basile Care Ctr., Inc.*, 21-cv-04377, 2022 WL 1010680, at *3 (W.D. La. Mar. 14, 2022) (citing *Miller v. Acadian Ambulance Service, Inc.*, 134 So.3d 250, 254 (La.App. 3 Cir. 03/05/14)), *report and recommendation adopted* 2022 WL 1009080 (W.D. La. Apr. 4, 2022). The defendant-healthcare provider bears the burden of showing that he is entitled to a medical review panel. *Id.* The LMMA defines malpractice as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered." LA. REV. STAT. § 1231.1(A)(13). In cases where the parties contest whether claims sound in medical malpractice under the LMMA, courts apply six factors: (1) whether the particular wrong is treatment-related or caused by a dereliction of professional skill; (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition; (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; and (6) whether the alleged tort was intentional. *Coleman v. Deno*, 813 So.2d 303, 215-16 (La. 2002). Federal courts have endorsed conducting the *Coleman* analysis to determine whether claims sound in medical malpractice. *See, e.g.*, *Lemelle*, 2022 WL 1010680, at *3-4 (analyzing whether claims sounded in medical malpractice and were thus subject to LMMA).

Because § 1983 claims are premised on the violation of constitutional civil rights involving intentional wrongdoing on the part of state officials, "the requirement for a medical review panel usually does not apply to [such] claims." *Saucier v. Uchendu*, 20-cv-1197, 2021 WL 2354600, at *6 (W.D. La. Mar. 1, 2021), *report and recommendation adopted*, 2021 WL 2345481 (W.D. La. Jun. 8, 2021); *see also Zavala v. City of Baton Rouge*, 17-656, 2018 WL 4517461, at *14 (M.D. La. Sep. 20, 2018) ("[Section] 1983 claims based on allegedly intentional or deliberately indifferent conduct are not subject to [the LMMA].").

In his motion, Dr. Nwude specifically requests that the claims against him be dismissed "without prejudice, and the proceedings be stayed." [Doc. No. 39]. The purpose of a stay in litigation is to allow certain events, such as parallel legal proceedings, to be resolved so that justice may be properly dispensed in the stayed proceeding. Dismissal of claims removes those claims from litigation; the proceeding no longer involves the dismissed claims. It is self-evident that, if the claims against Dr. Nwude are dismissed, then it would be unnecessary (and, in fact, inappropriate) to stay this proceeding on their account. Dr. Nwude has cited no authority for imposing a stay in the procedural posture that he requests (i.e., after dismissal). *See generally* [Doc. No. 40]. The Court will therefore construe Dr. Nwude's motion as one for dismissal of the claims against him on the basis of prematurity.

Turning to Dr. Nwude's general request for dismissal, he presents no substantive arguments and cites to no relevant authority concerning the sufficiency of Hassen's claims against him. *See id.* Conclusory assertions that the Complaint "fails to state a claim upon which relief can be granted" are insufficient to support dismissal. *Id.* at p. 1.

In contrast, Dr. Nwude does argue that the LMMA requires presentation of Hassen's claims to a medical review panel. Hassen first claims that Dr. Nwude is liable under § 1983 for violations

10

of her Fourth and Fourteenth Amendment rights.  [Doc. No. 1, pp. 10-13, 20, 23].  Caselaw makes clear that Plaintiff's constitutional claims asserted under § 1983 are not subject to examination by a medical review panel.  *See Saucier*, 2021 WL 2354600, at *6 (finding the LMMA medical review panel requirement usually does not apply to § 1983 claims).  It would thus be inappropriate to dismiss those claims (or stay this matter pending such review).

The Court turns to Hassen's state law civil conspiracy claim, and it finds that Dr. Nwude has failed to show the necessity of a medical review panel on this claim.  The actionable element in a civil conspiracy "is not the conspiracy itself, but rather the tort which the conspirators agree[d] to perpetrate and which they actually did commit in whole or in part."  *Ross v. Conoco, Inc.*, 828 So.2d 546, 552 (La. 2002) (citing *Butz v. Lynch*, 710 So.2d 1171, 1174 (La.App. 1 Cir. 4/8/98)), *writ denied* 721 So.2d 473 (La. 1998).  While the tort underlying a putative conspiracy claim may sound in medical malpractice, it would be improper to find that a conspiracy claim in and of itself is subject to a medical review panel.  The undersigned thus finds that Hassen's civil conspiracy claim does not sound in medical malpractice.

Only the IIED claim remains for analysis via the *Coleman* factors.  It cannot be said that the alleged particular wrong – the infliction of severe emotional distress – is treatment related.  Nor can it be said that expert medical evidence would reveal whether the appropriate standard of care was breached as the alleged wrong is not medical in nature.  However, the pertinent act is related to an assessment of Hassen's condition and occurred in the context of a patient-physician relationship.  Similarly, the alleged injury would not have occurred but for Hassen seeking treatment (although the undersigned observes it is debatable whether Hassen "sought" treatment given the specific circumstances by which she came to see Dr. Nwude).  Finally, IIED is, as the tort's name implies, an intentional tort.  Dr. Nwude has cited instances of courts treating intentional

torts as medical malpractice claims, the undersigned finds that this claim may be treated similarly. While the *Coleman* factors are split as to the IIED claim, the Court finds that the pertinent act and alleged injury factors weigh heavily in favor of a medical malpractice claim. As such, the Court finds that the claim for IIED against Dr. Nwude is subject to a medical review panel under the LMMA.

Further, the Court *sua sponte* enters dismissal in favor of Dr. Nwude. Although the Court found that Dr. Nwude's general request for dismissal presents no substantive arguments and cites to no relevant authority concerning the sufficiency of Hassen's claims against him and that Hassen's civil conspiracy claim did not arise from medical malpractice, the Court finds that Hassen cannot make any arguments showing why dismissal of her claims against Dr. Nwude are inappropriate here. The Court will show, *infra*, how Hassen has failed to establish a claim for conspiracy against any of the Defendants in this matter, and the Court applies that same logic to Dr. Nwude's motion. Looking at the facts as a whole, the Court finds that Hassen is unable to show how there is any cause of action against Dr. Nwude, and it therefore grants his motion [Doc. No. 39], and the claims made against him are dismissed with prejudice. To the extent that Dr. Nwude moves for a stay, the motion is denied as moot.

### a. Sua Sponte Notice

Given the Court's finding, it hereby gives Notice that it intends to *sua sponte* enter judgment in favor of Dr. Nwude, dismissing Hassen's claims against him with prejudice. Hassen has twenty-one days (21) to respond to this notice. If no reply is filed, the Court will enter judgment in favor of Dr. Nwude.

## V.    Section 1983 Claims

Hassen brings several claims under § 1983, alleging that she was unlawfully seized, her due process and equal protection rights were violated, and the state actor defendants failed to intervene to stop these violations.  [Doc. Nos. 1, pp. 6-17].  The Defendant Officers invoke various immunities in response to the § 1983 claims brought against them, while the City argues that Hassen has failed to state a claim for municipal liability.  [Doc. Nos. 7-1, pp. 15-27].  C. Bowman, Schutzman, and Walker contend that Hassen has failed to plead a conspiracy sufficient to make them – non-state actors – liable under § 1983.  [Doc. No. 29, pp. 6-8].  Dr. Belue invokes statutory immunities arising under Louisiana law and argues that Hassen has failed to state a claim against him.  [Doc. No. 41-1, pp. 4-8].

### a.    *Section 1983 and Qualified Immunity*

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C. § 1983.  The statute does not create any substantive rights; it simply provides a remedy for the rights designated therein.  *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997).  "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983."  *Id.* (quoting *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)).  A § 1983 suit may be brought against a party in that party's official or individual capacity, as well as against a government entity.  *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)).  An individual-capacity suit seeks to impose liability on a "government officer for actions taken under color of state law."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  A plaintiff bringing an individual-capacity claim need only show

that "the official, acting under color of state law, caused the [alleged] deprivation of a federal right." *Goodman*, 571 F.3d at 395 (quoting *Graham*, 473 U.S. at 166). An official-capacity suit is generally "another way of pleading an action against an entity of which an officer is an agent." *Id.* (quoting *Monell*, 436 U.S. at 690 n.55). Therefore, an official-capacity suit is treated as a suit against the real party in interest—the government entity— not against the official personally, *Graham*, 473 U.S. at 166, and is referred to as a municipal liability or *Monell* claim. *Edwards v. City of Balch Springs*, 70 F.4th 302, 307 (5th Cir. 2023). To succeed on a *Monell* claim, a plaintiff must prove that he was deprived of a federally protected right (1) pursuant to an official municipal policy (2) promulgated by the municipal policymaker (3) that was the moving force behind the constitutional violation. *Id.*

Qualified immunity may be invoked by government officials facing potential liability. Officials performing discretionary functions are generally shielded from civil damages by this immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights" which a reasonable person would know. *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). Under the doctrine, defendant-officials are given "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "[A]ll but the plainly incompetent or those who knowingly violate the law" are protected by properly applied qualified immunity. *Id.* Qualified immunity is "an immunity from suit, not merely a defense to liability." *Guadarrama*, 3 F.4th at 133; *see also Lopez v. Ramirez*, No. 21-40235, 2022 WL 3230442, at *2 (5th Cir. Aug. 10, 2022) (indicating protection from pretrial discovery is "among the chief benefits" of qualified immunity). Accordingly, a defendant's entitlement to this immunity "should be determined at the earliest possible stage of litigation." *Lopez*, 2022 WL 3230442, at *2.

When a § 1983 defendant asserts qualified immunity, the plaintiff facing a related Rule 12(b)(6) motion to dismiss must plead facts sufficient to both state a § 1983 claim and overcome the qualified immunity defense.  *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) ("[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.").  The facts overcoming qualified immunity must meet the pleading standard promulgated in *Twombly*, 550 U.S. 544 and *Iqbal*, 556 U.S. 662. *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020).  To overcome a defendant-official's invocation of qualified immunity, a plaintiff must show that the defendant-official's conduct violated clearly established law.  *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).  To meet this burden, plaintiffs face a two-prong test.  The plaintiff must demonstrate that the defendant-official committed a constitutional violation under current law, *Crostley v. Lamar Cnty.*, 717 F.3d 410, 422 (5th Cir. 2013), and that the defendant-official's actions were objectively unreasonable in light of law that was clearly established at the time of the alleged violation.  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).

The principals governing federal qualified immunity analysis also apply to invocations of qualified immunity against claims arising under the Louisiana Constitution. *See Moresi v. Dep't of Wildlife & Fisheries*, 567 So.2d 1081, 1093 (La. 1990) ("The same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under

§ 1983 require us to recognize a similar immunity for them under any action arising from the state constitution.").

**b.    *Due Process Claims***

Hassen alleges that she was "denied substantive due process under the United States and Louisiana Constitutions."  Complaint [Doc. No. 1, p. 10].  She alleges that the liberty interests she holds in her "good name, reputation, honor, [and] integrity" were violated through "arbitrary or capricious" decision-making by state officials lacking a "rational basis" for involuntarily institutionalizing her.  *Id.* at pp. 10-11.  Hassen also alleges that Defendants are liable for "imposition of a stigma or other disability that foreclosed her freedom to take advantage of educational, employment, or other opportunities."  *Id.*  The undersigned assesses the claims implicating state actor defendants (the Defendant Officers and Dr. Belue) here.[9]

**i.    Fourteenth Amendment Due Process Claims**

While Hassen's pleadings do not specify which federal constitutional provision gives rise to her due process claims, the undersigned understands them to arise from the Fourteenth Amendment.[10]  The Fourteenth Amendment prohibits deprivation of life, liberty, or property without due process of law.  U.S. CONST. amend. XIV, § 1.  The guarantee of due process has two components: (1) procedural protections when the state seeks to deprive an individual of protected liberty or property interests and (2) substantive protections against conduct that shocks the conscience.  *Jordan v. Fisher*, 823 F.3d 805, 810 (5th Cir. 2016) (citing *Cnty. of Sacramento v.*

---

[9] *See supra* section IV for a discussion of these claims vis-à-vis Dr. Nwude and *infra* section V concerning the liability of other non-state actors under § 1983.

[10] Hassen does not specifically plead that her due process claims arises under this constitutional provision. However, her opposition to the motion filed by the City, Rogers, Wood, Loyd, and Richard explicitly argues that her Fourteenth Amendment due process rights were violated.  *See* [Doc. No. 45-1, p. 15].  Hassen generally refers to the Fifth Amendment throughout the Complaint.  However, there are no allegations that are clearly or plausibly tied to rights arising under that provision (i.e., none of the allegations implicate the federal government or its agents).

*Lewis*, 523 U.S. 833, 846 (1998); *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010)). Procedural due process claims are subject to a two-part analysis.  First, the court determines whether the plaintiff has a protected liberty or property interest.  *Id.* (citing *Wilkinson v. Austin*, 545 U.S. 209, 213 (2005)).  Second, the court ascertains whether the state provided adequate procedures for the vindication of that interest.  *Id.*  Substantive due process claims require courts to determine whether the alleged behavior of the defendant-official was sufficiently "abusive, irrational or malicious," *Morris v. Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999), as to be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).  If this standard is met, the court then ascertains "whether there exist historical examples of recognition of the claimed liberty protection at some appropriate level of specificity."  *Morris*, 181 F.3d at 668.  This test prohibits only the most egregious official conduct and "will rarely come into play."  *Jordan*, 823 F.3d at 812-13.

While Hassen specifically alleges that her *substantive* due process rights were violated, *see* [Doc. No. 1, p. 10] ("Hassen alleges that she was denied substantive due process under the [U.S. Constitution]."), the pleadings clearly indicate that she is also alleging a violation of her *procedural* due process rights.  *See id.* (The "arbitrary or capricious decision-making" of defendants "violate[d,]" *inter alia*, Hassen's "liberty interests" in her "good name, reputation, honor, or integrity[.]").  Consequently, the undersigned analyzes Plaintiff's claim as implicating both procedural and substantive due process.

The undersigned briefly notes that Rogers, Wood, Loyd, Richard, and Dr. Belue invoke statutory immunities arising under Louisiana law.  [Doc. Nos. 7-1, pp. 16-17]; [Doc. Nos. 41-1, pp. 4-8].  State statutory immunity is inapplicable to § 1983 claims predicated on violations of federal law.  The Supremacy Clause of the U.S. Constitution makes clear that federal law "shall

be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."  U.S. CONST. art. IV. Consequently, immunity arising under state law cannot be invoked against claims grounded in federal law that does not otherwise allow for such immunity.  *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) ("[S]tate law that conflicts with federal law is without effect." (quotations removed)).  The Officer Defendants and Dr. Belue's attempt to shield themselves from liability under the U.S. Constitution using immunity created by state law necessarily fails.

To begin the procedural due process analysis, the existence of a protected liberty or property right must first be established.  Hassen argues that by "unlawfully seizing her and compelling her to be taken against her will to a mental health facility," Rogers, Wood, Loyd, and Richard "violated her due process liberty interests in being free from unreasonable seizure." [Doc. No. 45, p. 17].  Hassen adds that this conduct "damaged her good name, reputation, honor, integrity, and placed upon her a stigma that foreclosed her freedom to take advantage of employment and other opportunities." *Id.*  Hassen declines to clarify what conduct on Dr. Belue's part violated her due process rights, instead relying on generalities to explain his liability.  *See, e.g.*, [Doc. No. 64, p. 12] ("As Plaintiff shows and establishes out in her Complaint, the Defendants violated her right to not be deprived of liberty without due process of law.").

It is well-established that the Fourteenth Amendment guarantees "freedom from bodily restraint." *Bd. of Regents v. Roth*, 408 U.S. 564, 572 (1972) (quoting *Meyer v. Nebraska*, 262 U.S. 625, 626 (1923)).  As discussed *infra*, the conduct of Rogers, Wood, Loyd, Richard, and Dr. Belue did not run afoul of the Fourth Amendment.  Thus, these defendants did not impose a constitutionally impermissible bodily restraint and there was no need for vindication of that interest.  Hassen must therefore rely on allegations of stigma to find a protected liberty interest.

18

For stigma to implicate such an interest, the stigmatization must be "in connection [to] the denial of some specific constitutional guarantee or some 'more tangible' interest." *Marrero v. City of Hialeah*, 625 F.2d 499, 512-13 (5th Cir. 1980) (quoting *Paul v. Davis*, 424 U.S. 693, 700-01 (1976)). The "more tangible interest" – or so-called "plus factor" – "need not itself be a protected liberty or property interest." *Id.* at 513 n.17. It cannot be said that Rogers, Wood, Loyd, Richard, or Dr. Belue denied Hassen any constitutional guarantees as their conduct did not run afoul of any other constitutional provisions. *See infra*. Nor can it be said that they denied Hassen a "more tangible interest." The Defendant Officers did not issue the PEC or CEC, temporarily suspend Hassen's nursing license, or suspend her from her position with Elara Caring Hospice. While Dr. Belue did issue a CEC, there are no allegations sufficient to establish he did so in contravention of state law. *See infra* section V.b.ii. Indeed, there are only conclusory allegations – allegations that need not be accepted as true – that Dr. Belue "knew or should have known" that the information provided to the Defendant Officers was inaccurate or not credible. While Hassen invokes other interests (e.g., her name, reputation, and honor), she fails to sufficiently allege that the Defendant Officers or Dr. Belue denied her said interests. It follows that Hassen has not sufficiently pleaded a "stigma-plus" liberty interest. Plaintiff has thus failed to plead a violation of her procedural due process rights under the Fourteenth Amendment. The Defendant Officers are entitled to qualified immunity as to Hassen's putative procedural due process claim, and Dr. Belue has also successfully established that the same claim against him should be dismissed.

Turning to Hassen's substantive due process claim, the threshold inquiry is whether the alleged conduct of Rogers, Wood, Loyd, Richard, and Dr. Belue is "so egregious, so outrageous,

that it may fairly be said to shock the contemporary conscience."[11]  The Defendant Officers were present when Loyd questioned Hassen about homicidal thoughts or plans, and Rogers asked her if she were armed.  Rogers and Loyd were then present when Dr. Nwude conducted his examination of Hassen, resulting in his issuance of a PEC.  None of these actions shock the contemporary conscience as they were standard steps taken by officers responding to reports of a potentially violent individual.  There are no affirmative allegations about the conduct of Wood or Richard beyond an alleged failure to intervene (misconduct which Rogers and Loyd are also alleged to have engaged in).  As discussed *infra*, Hassen has not stated cognizable failure to intervene claims against the Defendant Officers; it would be inapposite to find that conduct which does not amount to such a claim is sufficiently shocking to the conscience to support a substantive due process violation.  Concerning Dr. Belue, Plaintiff offers only the barebones allegation that the coroner "came to Serenity Springs and completed a [CEC but] did not complete the procedural due process required" and acted "with bas faith, bad motive, and bad will."  Complaint [Doc. No. 1, pp. 5-6]. This conduct – unsupported by particularized allegations – does not shock the contemporary conscience.  Hassen has failed to allege that the Defendant Officers violated her substantive due process rights, thus entitling those defendants to qualified immunity.  Hassen has also failed to state a substantive due process claim against Dr. Belue.

Accordingly, Rogers, Wood, Loyd, and Richard's motion [Doc. No. 7] is denied to the extent it seeks state statutory immunity against Hassen's Fourteenth Amendment due process claim and granted to the extent it seeks qualified immunity against that claim.  Further, Dr. Belue's motion [Doc. No. 41] is denied to the extent it seeks statutory immunity against Hassen's

---

[11] Conduct that has been found to violate substantive due process include a teacher's fabrication of sexual abuse against a student's father, *Morris*, 181 F.3d 657 (5th Cir. 1999) and sexual assault by a sheriff's deputy during a home welfare check.  *Tyson v. Sabine*, 42 F.4th 508 (5th Cir. 2022).

Fourteenth Amendment due process claim for failure to state such a claim and granted to the extent it seeks dismissal of that claim.

### ii.    Due Process Claim under the Louisiana Constitution

Hassen also alleges that Rogers, Wood, Loyd, Richard, and Dr. Belue violated her due process rights under the Louisiana Constitution.  [Doc. No. 1, pp. 10-11].  The Defendant Officers argue that they are entitled to discretionary immunity under Louisiana Revised Statute § 9:2798.1.  [Doc. No. 7-1, pp. 16-17].  Dr. Belue contends that he is entitled to immunity under Louisiana Revised Statutes §§ 9:2798.1, 13:5713, and 28:53.2.  [Doc. No. 41-1, pp. 4-8].

At the outset, the undersigned observes that § 1983 provides a remedy for violations of federally protected rights, not those protected by state law.  *See* 42 U.S.C. § 1983; *Anderson v. Jackson*, 556 F.3d 351, 356 (5th Cir. 2009) ("Section 1983 permits private individuals to sue state actors to enforce *constitutional rights* as well as *rights created by federal statutes*." (emphasis added)).  Hassen putatively seeks a remedy for her Due Course of Law claim – a right arising under state law – through § 1983.  That provision of federal law provides no remedy for violations of a right arising under Louisiana state law.  However, the Defendant Officers and Dr. Belue have raised immunity defenses to the claim, a defense that would apply if Hassen were permitted to amend to properly assert her claims.  Thus, to fully resolve the issues before the Court, the undersigned addresses the parties' arguments concerning this claim.

The Louisiana Constitution guarantees that "[n]o person shall be deprived of life, liberty, or property, except by due process of law."  LA. CONST. art. I, § 2.  Courts in Louisiana have found that the rights protected by this provision are coextensive with the due process protections of the U.S. Constitution.  *See Plaquemines Parish Government v. River/Road Const., Inc.*, 828 So.2d 16, 24 (La.App. 4 Cir. 8/28/02) ("[F]ederal jurisprudence is relevant in determining the nature and

extent of [Article I, § 2's] due process protection."); *State v. Smith*, 614 So.2d 778, 780 (La.App. 2 Cir. 2/24/1993) ("We are aware of no authority for finding a greater due process protection under the Louisiana Constitution [as compared to the U.S. Constitution].").

Under the law of Louisiana, public officials cannot incur liability "based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." LA. REV. STAT. § 9:2798.1(B).  Immunity under § 9:2798.1(B) is referred to as "discretionary immunity."  This provision makes public officials "presumptively entitled to immunity from liability" arising under state law and incurred from discretionary acts.  *Larpenter v. Vera*, 22-30572, 2023 WL 5554679, at *7 (5th Cir. Aug. 29, 2023).   However, defendant-officials are ineligible for discretionary immunity if the challenged conduct is "not reasonably related to the legitimate governmental objective for which . . . the discretionary power exists" or the conduct is "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."  LA. REV. STAT. § 9:2798.1(C).  More specifically, § 13:5713(I), denies imposition of liability on "an elected coroner or his support staff based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties."  *Id.* at § 13:5713(I)(1).  Immunity under § 13:5713(I) cannot be invoked when the challenged conduct is not reasonably related to legitimate government activity or is unlawful in nature.  *See id.* at § 13:5713(2).  Finally, coroners and assistant coroners who, acting in good faith, issue a CEC are immune from civil liability for damages.  *Id.* at § 28:53.2(E).

As discussed *supra*, Hassen has failed to plead that the Defendant Officers ran afoul of her federal due process rights.  It would thus be inappropriate to find that they violated her due process rights arising under the Louisiana Constitution.  Under the same analysis, Plaintiff's only argument

against the Defendant Officers' invocation of discretionary immunity is that their conduct was unconstitutional and, thus, not an exercise of "lawful powers and duties" or pursuant to "a legitimate governmental objective." [Doc. No. 45-1, p. 19]. This circular argument fails. Prompt investigation and acotion when an individual is allegedly undergoing a mental health crisis with the potential for violence is a legitimate governmental objective.  Merely calling the actions unconstitutional, under state or federal law, does not make it so.  Rogers, Wood, Loyd, and Richard are entitled to discretionary immunity.

The undersigned also finds that Dr. Belue is entitled to statutory immunity.  As the claims under the Louisiana Constitution arise under state law, Dr. Belue is provisionally eligible to the immunities he has invoked.  Unless his conduct was not reasonably related to a legitimate government objective, not lawful, or not in good faith.  Dr. Belue allegedly visited Hassen while she was held at Serenity Springs and completed a CEC.  According to Hassen, Dr. Belue "did not actually exercise professional judgment deciding to order her to be involuntarily hospitalized for alleged mental illness at the bad faith request of [Bowman]."  [Doc. No. 1, p. 11].  However, this conclusory statement is unsupported by additional factual allegations; a baldfaced assertion that Dr. Belue did not exercise professional judgment does not pass into the realm of plausibility. Likewise, a cursory allegation that Dr. Belue "did not complete the procedural due process required for a CEC," *id.* at p. 5, constitutes a legal conclusion that the court disregards.  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  This is the full extent of Dr. Belue's alleged misconduct.

There are no plausible allegations that Dr. Belue was acting outside the course and scope of his lawful powers and duties as parish coroner when he issued a CEC.  Nor are there allegations that issuance of a CEC – a process by which individuals who are deemed a potential threat to

themselves and the community are provided care – is unrelated to a legitimate government objective or is unlawful in nature.  Dr. Belue is entitled to discretionary immunity and immunity under § 13:5713(I)(1).  Hassen's barebones allegations against Dr. Belue also fail to plausibly show that he did not act in good faith, meaning that he is also entitled to immunity under § 28:53.2(E).

Accordingly, Rogers, Wood, Loyd, and Richard's motion [Doc. No. 7] is granted to the extent it seeks discretionary immunity against Hassen's due process claims under the Louisiana Constitution, and these claims are dismissed with prejudice.  Further, Dr. Belue's motion [Doc. No. 41] is granted to the extent it seeks statutory immunity against Hassen's due process claim under the Louisiana Constitution, and this claim against Dr. Belue is dismissed with prejudice.

**c.    *Fourteenth Amendment Equal Protection Claims***

Hassen also brings a Fourteenth Amendment claim under the Equal Protection Clause. Hassen alleges that "[o]ther employees have been known to carry weapons onto the Family Clinic's property[, but only she was] singled out and wrongfully deemed 'homicidal and suicidal.'" [Doc. No. 1, p. 11].  Rogers, Wood, Loyd, and Richard argue that they are entitled to qualified immunity as Hassen has failed to state an equal protection claim against them.  [Doc. No. 7-1, pp. 17-18].  Dr. Belue argues that Hassen has failed to state a claim against him and invokes statutory immunity.  [Doc. No. 41-1, pp. 1, 4-8].[12]

The Equal Protection Clause of the Fourteenth Amendment guarantees that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  This clause essentially requires that all persons similarly situated be treated alike.  *Glass v. Paxton*, 900 F.3d 233, 244 (5th Cir. 2018).  A plaintiff pleading an equal protection claim must

---

[12] Dr. Belue contends that Hassen's pleadings concerning his lack of probable cause to issue a CEC and his bad faith in issuing that document are deficient.  [Doc. No. 41-1, pp. 7-8].  The undersigned interprets these points to apply to both his failure to state a claim and statutory immunity arguments.

show that "similarly situated individuals were treated differently." *Hines v. Quillivan*, 982 F.3d 266, 272 (5th Cir. 2020).  In cases where the plaintiff is not a member of a suspect class, courts apply rational basis review.  *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) ("[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.").  At the motion to dismiss stage, the reviewing court treats challenged differential treatment as valid "if [it] is able to hypothesize a legitimate purpose to support the action." *Hines*, 982 F.3d at 273 (quotation omitted).  If the challenged action "does not appear to classify or distinguish between two or more relevant persons or groups, then the action – even if irrational – does not" run afoul of the Equal Protection Clause.  *Vera v. Tue*, 73 F.3d 605, 610 (5th Cir. 1996).

Before analyzing the sufficiency of Hassen's allegations, it should be noted that Dr. Belue's invocation of state statutory immunities necessarily fails.  As discussed, state law immunity is ineffective against claims grounded in federal law.

The undersigned now turns to the sufficiency of the pleadings associated with this claim. Hassen's allegation that "[o]ther employees have been known to carry weapons onto the Family Clinic's property" is insufficiently particular to cross the threshold into plausibility.  Offhanded references to "other employees" without any context or specific factual allegations are patently conclusory and need not be accepted as true.  Furthermore, Hassen has not alleged that she is a member of a suspect class.  Consequently, Hassen has failed to establish she was treated differently than similarly situated individuals or groups in any legally significant way.  The Defendant Officers are entitled to qualified immunity against the claim.  As discussed *supra*, Hassen's allegations concerning Dr. Belue boil down to unsupported assertions that he acted in bad faith.  These

25

conclusory allegations do nothing to show Dr. Belue treated Hassen differently than others. Consequently, Hassen has also failed to state an equal protection claim against Dr. Belue.

Accordingly, Rogers, Wood, Loyd, and Richard's motion [Doc. No. 7] is granted to the extent they seek qualified immunity against Hassen's equal protection claim, and this claim is dismissed with prejudice.  Dr. Belue's motion [Doc. No. 41] is denied to the extent that it seeks dismissal based on state law claims, but it is granted to the extent it argues Hassen has failed to state an equal protection claim against him, and the claim is dismissed with prejudice.

### d.    *Fourth Amendment Claims*

Hassen's next § 1983 claim is for unreasonable and unlawful seizure in violation of the Fourth Amendment.   [Doc. No. 1, pp. 11-13].   The allegations associated with this claim specifically name Rogers, Wood, Loyd, Richard, and Dr. Belue as liable for the putative violations of the Fourth and Fourteenth Amendments.  *Id.*  Rogers, Wood, Loyd, and Richard invoke qualified immunity on the basis that Hassen has failed to state a claim.  [Doc. No. 7-1, pp. 19-21].  These Defendants, as well as Dr. Belue, also invoke Louisiana state statutory immunities against the claim.  *Id.* at p. 21; [Doc. No. 41-1, pp. 4-8].  Dr. Belue further argues that Hassen has failed to state a claim upon which relief may be granted.  [Doc. No. 41-1, p. 1].[13]

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures[.]"  U.S. CONST. amend. IV.  This guarantee applies "to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest."  *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975).  A seizure occurs when, "under the totality of the circumstances, a reasonable person would have thought he was not

---

[13] As discussed *supra* note 12, the undersigned interprets Dr. Belue's points concerning probable cause and bad faith conduct to apply to both his failure to state a claim and statutory immunity arguments against Hassen's Fourth Amendment claim.

free to leave." *Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021).  Seizures can occur in different contexts and are thus subject to different "tiers" of Fourth Amendment protection, each with their own legal analyses.  *Lincoln v. Scott*, 887 F.3d 190, 196 (5th Cir. 2018).  On the less protected end of the spectrum, "investigatory, suspicionless seizure[s]" are subject to a reasonableness analysis. *Id.* (citing *Brown v. Texas*, 443 U.S. 47. 50-51 (1979)).  At the other end of the spectrum, more substantial seizures are subject to probable cause analysis. [14] *Dunaway v. New York*, 442 U.S. 200, 212-13 (finding seizure that did not include official arrest subject to probable cause analysis).  "The probable cause standard applies in the context of a seizure of the mentally ill." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (quoting *Cantrell v. City of Murphy*, 666 F.3d 911, 923 n.8 (5th Cir. 2012)).  In that context, probable cause exists when "the facts and circumstances within the officer's knowledge at the time of the seizure are sufficient for a reasonable person to conclude that an individual is mentally ill and poses a substantial risk of serious harm." *Cantrell*, 666 F.3d at 923.

Before proceeding further, it should be noted that the parties dispute which standard – reasonableness or probable cause – applies to Hassen's Fourth Amendment claim.  Binding Fifth Circuit precedent clearly indicates that the seizure is subject to probable cause analysis.  The parties agree that the seizure at issue was for purposes of a mental health evaluation,[15] clearly subjecting it to probable cause analysis per *Rich* and *Cantrell*.  The seizure was specifically to effectuate a mental health evaluation on the basis that Rogers, Wood, Loyd, and Richard "did not believe

---

[14] Probable cause "is a fluid concept . . . not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  "In dealing with probable cause, [courts] deal with probabilities.  These are not technical; they are factual and practical considerations of everyday life in which reasonable prudent men, not legal technicians, act." *Brinegar v. U.S.*, 338 U.S. 160, 175 (1949).

[15] Hassen's pleadings describe the seizure as predicated on a determination (albeit an allegedly defective one) that she "was mentally ill and pose[d] an emergent danger to [herself] and others," necessitating "an emergency mental health evaluation."  [Doc. No. 1, p. 9].  The Defendant Officers argue that they detained Hassen "so a physician could decide whether to issue a [PEC]."  [Doc. No. 46, p. 2].

Plaintiff's denials" that she was experiencing a mental health episode. *Id.* at pp. 2-4.  Analysis will proceed under the probable cause standard.

As discussed *supra*, state statutory immunity cannot be used as a shield against claims arising from federal law unless said law sanctions such immunity.  The undersigned is unaware of any such allowance, and the Defendants fail to cite any authority that changes this.  It is inappropriate to grant the Defendant Officers and Dr. Belue statutory immunity against Hassen's unreasonable seizure claim.

Now we must turn to the sufficiency of Hassen's pleadings.  According to the Complaint, Hassen was summoned to Bowman's office, where Loyd and Rogers questioned her.  The Court finds that, in the presence of four armed officers and under questioning by the same, a reasonable person would have thought she was not free to leave the office.  A seizure was commenced when Hassen entered Bowman's office.  At the time of the seizure, the Defendant Officers had spoken to Schutzman, who had indicated that Hassen "was not going to do suicide by cop."  Walker confirmed these statements, adding that Hassen had previously "made threats to harm herself and her children."  Hassen herself denied that she was currently having or ever had "any homicidal thoughts or plans," but confirmed that she had a firearm in her office.  In sum, the Defendant Officers had knowledge at the time of the seizure that Hassen purportedly made statements that were sufficiently threatening to merit summoning the police, was denying those statements under questioning, and had access to a firearm.  That knowledge in addition to the attendant circumstances – officers being called to investigate an armed employee accused of making violent threats – was sufficient for a reasonable person to conclude that Hassen was suffering from mental illness and posed a substantial risk of serious harm.  As Rogers, Wood, Loyd, and Richard had probable cause to seize Hassen, they did not violate her Fourth Amendment rights in effecting that

28

seizure.  Absent such a violation, the Defendant Officers are entitled to qualified immunity against Plaintiff's Fourth Amendment claim.

Further, their conduct was objectively reasonable in light of clearly established law.  This is because the Defendant Officers had personally spoken with Schutzman, Walker, and Hassen, providing a factual basis to analyze an ongoing and developing situation.  As that situation involved an individual who was potentially emotionally unstable and dangerous and had access to a firearm, it was reasonable for the Defendant Officers to think they had probable cause to affect a seizure.  In light of this conclusion, Rogers, Wood, Loyd, and Richard are entitled to qualified immunity against Hassen's Fourth Amendment claim even if they did not have probable cause to affect the seizure.

Hassen has also failed to state a Fourth Amendment claim against Dr. Belue.  As discussed *supra*, Dr. Belue had sufficient grounds to issue a CEC.  In addition to the detailed information, Dr. Belue also knew that the Hassen's condition was sufficient for Dr. Nwude to issue a PEC, adding to the propriety of his conduct.  As the pleadings indicate that Dr. Belue had probable cause to seize Hassen by way of a CEC, Hassen has failed to state a Fourth Amendment claim against him.

Rogers, Wood, Loyd, Richard, and Dr. Belue's motions [Doc. Nos. 7, 41] are denied to the extent they seek state statutory immunity against Hassen's Fourth Amendment claim.  However, Rogers, Wood, Loyd, and Richard's motion is granted to the extent it seeks qualified immunity against the Hassen's Fourth Amendment claim.

Dr. Belue's motion is granted to the extent it seeks dismissal predicated on Hassen's failure to state a Fourth Amendment claim.

Accordingly, Hassen's Fourth Amendment claims against these Defendants should be dismissed with prejudice.

**e.      *Federal Failure to Intervene Claim***

Hassen's final theory of liability under § 1983 is predicated on alleged failures to intervene in the deprivation of her constitutional rights.  [Doc. No. 1, pp. 13-14].  The allegations associated with this claim specifically name Rogers, Wood, Loyd, Richard, and Dr. Belue.  *Id.*  The Defendant Officers invoke qualified immunity on the basis that Hassen has failed to state a claim for any underlying constitutional violations.  [Doc. No. 7-1, pp. 22-23].  These Defendants also argue that federal failure to intervene claims are inapplicable to the instant fact pattern.  *Id.*  Dr. Belue again invokes Louisiana state statutory immunities and argues that Hassen has failed to state a claim against him.  [Doc. No. 41-1, pp. 4-8].[16]

To state a failure to intervene claim under § 1983, the plaintiff must plead that the defendant-officer (1) knew a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) did not act.  *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).  The Fifth Circuit has observed that although this test "most often applies in the context of excessive force claims, other constitutional violations may support a [failure to intervene theory of harm]."  *Id.* at 646 n.11; *see Richie v. Wharton Cnty. Sheriff Dep't Star Team*, 513 F.App'x 382 (5th Cir. Feb. 19, 2013) (per curiam) (suggesting the plaintiff could have pleaded individual liability of officers but for his failure to "allege or set forth facts to suggest that the [individual officers] were liable under a theory of bystander liability for failing to prevent even other member from committing constitutional violations [other than excessive use of force]").

---

[16] As discussed *supra* note 12, the undersigned interprets Dr. Belue's contentions concerning probable cause and bad faith conduct to apply to both his failure to state a claim and statutory immunity arguments against Hassen's failure to intervene claim.

Here, as discussed, Hassen has failed to allege that Rogers, Wood, Loyd, and Richard committed constitutional violations.   Moreover, as will be discussed *infra*, Hassen has not sufficiently alleged any constitutional violations by the A Plus Medical Defendants.   It is self-evident that in the absence of a constitutional violation by any of the Defendants that the Defendant Officers interacted with, those same Defendants would have no constitutional violations to be aware of and prevent.   Hassen has failed to plead that the Defendant Officers were aware of any constitutional violations and they are consequently entitled to qualified immunity against her failure to intervene claim.

Belue again invokes state statutory immunities, which, again, do not apply.  However, there are no allegations that Dr. Belue, at any time, had an opportunity to intervene in any constitutional violation.  As discussed *supra*, Dr. Belue is alleged to have acted in bad faith and without probable cause.   There are no allegations in the controlling pleadings that Dr. Belue interacted with any Defendant while they were putatively violating Hassen's constitutional rights.   Hassen has thus failed to state a failed to intervene claim against Dr. Belue.

Accordingly, Rogers, Wood, Loyd, and Richard's motion [Doc. No. 7] is granted to the extent it seeks qualified immunity against the Hassen's federal failure to intervene claim and these claims are dismissed with prejudice.   Dr. Belue's motion [Doc. No. 41] is denied to the extent it seeks statutory immunity against Hassen's federal failure to intervene claim, but granted to the extent it seeks dismissal of that claim, and the claim is dismissed with prejudice.

### f.   *Municipal Liability Claim*

Hassen has also asserted a municipal liability claim against the City.[17] [Doc. No. 1, pp. 14-17].   This liability is allegedly predicated on numerous policies authorizing and enabling various

---

[17] The pleadings variously name the City of Ruston Police Department and the City of Ruston as the relevant municipal entity for purposes of this claim.  *Compare* [Doc. No. 1, p. 15] ("The City of Ruston Police Department,

constitutional violations.  *Id.* at p. 15.  The City counters that Hassen has failed to plead the existence of any municipal policies and has failed to state a municipal liability claim.  [Doc. No. 7-1, pp. 23-27].

To successfully state a *Monell* claim, a plaintiff must prove that she was deprived of a federally protected right (1) pursuant to an official municipal policy (2) promulgated by the municipal policymaker (3) that was the moving force behind the constitutional violation.  *Edwards*, 70 F.4th at 307.  An official policy may be shown through written policy statements, ordinances, or regulations; a widespread practice that is so common and well-settled as to constitute a custom that represents municipal policy; or a single act conducted by an official or entity with final policymaking authority.  *Sweetin v. City of Texas City*, 48 F.4th 387, 392 (5th Cir. 2022).  For a practice to constitute a custom, it must have occurred for so long or so frequently that "the course of conduct warrants attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice" of municipal employees.  *Martinez v. Nueces Cty.*, 71 F.4th 385, 389 (5th Cir. 2023) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009)).  To plausibly plead a practice "so persistent and widespread as to practically have the force of law," a plaintiff must describe more than just the incident giving rise to his putative injury.  *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  There is a "'single incident exception'" to the policy or custom requirement, but the exception is "extremely narrow and gives rise to municipal liability only if the municipal actor

---

through its agents [maintained unconstitutional policies].") *with* [Doc. No. 1, p. 16] ("Hassen seeks judgment for damages against Defendant, City of Ruston, for the constitutional violations [incurred pursuant to its policies]."). As the City of Ruston Police Department has been terminated from this case as a non-juridical entity, the undersigned understands this claim to be brought against the City.  The undersigned also observes that, in relation to this claim, Hassen alleges the Defendants "caused injury to Mr. Phillips."  [Doc. No. 1, pp. 16-17].  This erroneous allegation will be attributed to typographical error.

is a final policymaker." *Valle v. City of Houston*, 613 F.3d 536, 542 (2010) (quoting *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008)).

Concerning the policymaker prong, "[a]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policymaking authority." *Id.* (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc)).  The Fifth Circuit distinguishes between final policymaking authority and final decision-making authority. *Id.*  An individual is a final policymaker (and potentially liable under § 1983) if they are responsible for making law or setting policy in a given area of municipal business, *Sweetin*, 48 F.4th at 392, while a final decisionmaker can be liable under that law only if they posses "final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).  "[D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton*, 541 F.3d at 549.  The question of whether an official possesses final policymaking authority for purposes of municipal liability is a question of state and local law. *Pembaur*, 475 U.S. at 483.

Here, Hassen alleges six policies were the moving force behind purported constitutional violations.  These are policies to (1) involuntarily hospitalize individuals without probable cause; (2) inadequately train officers how to establish probable cause; (3) inadequately train officers how to intervene in unlawful arrests; (4) employ and retain Rogers, Wood, Loyd, and Richard, despite knowledge that these individuals "had dangerous propensities for abusing authority"; (5) inadequately supervise the Officer Defendants despite knowledge of "the aforementioned propensities and character traits"; and (6) maintain "a policy of inaction and an attitude of indifference towards increasing numbers of arrests unsupported by probable cause." [Doc. No. 1, p. 15].

The first hurdle Plaintiff must overcome is sufficiently pleading the existence of these six policies.  There are no allegations that any of these policies are written in any capacity.  Nor are there any allegations that these policies are widespread.  On this point, the pleadings are bereft of any detailed allegations illustrating that there have been multiple instances of involuntary hospitalizations lacking probable cause, that Defendant Officers have dangerous propensities for abusing authority, that the City was or should have been aware of those purported propensities, or that an increasing number of arrests are unsupported by probable cause.  Nor are there any substantive allegations concerning the training provided by the City.  In short, the City's putative practices are described by purely conclusory statements.  These allegations are insufficient to plausibly plead practices so persistent and widespread as to practically have the force of law.

The only alleged incident of misconduct referred to in the pleadings is the episode involving Hassen herself.  The single incident exception is the last route by which Hassen may plead the existence of a municipal policy.  Hassen's pleadings offer only conclusory allegations that Rogers is a policymaker (not even a final policymaker) and references Ruston Mayor Ronny Walker only in passing.  *See id.* at pp. 15-16.  At no point does Hassen allege that Mayor Walker had any awareness of or involvement in the events giving rise to her claims.  Hassen failed to plausibly allege that the single incident exception applies in this case.

Accordingly, the City's motion [Doc. No. 7] is granted to the extent it seeks dismissal of Hassen's § 1983 municipal liability claim, and the claim is dismissed with prejudice.

g.      ***Section 1983 Liability of Non-State Actors***

In addition to her allegations against government officials, Hassen alleges that C. Bowman, Schutzman, and Walker "acted in concert with state actors by making false reports to Rogers as well as the Louisiana State Board of Nurses" in violation of § 1983.  *Id.* at p. 8.  C. Bowman,

Schutzman, and Walker contend that because the pleadings lack specific factual allegations sufficient to establish a conspiracy between themselves and governmental actors, Hassen has failed to state a § 1983 claim against them.  [Doc. No. 29, pp. 6-8].

To state a cause of action under § 1983, a plaintiff must allege that "the person who deprived him of a federal right was acting under color of law." *Priester v. Lowndes Cty.*, 354 F.3d 414, 420 (5th Cir. 2004).  If the person who caused the alleged deprivation is a non-state actor, the plaintiff must allege (1) an agreement between the private and public defendants to commit an illegal act and (2) deprivation of a constitutional right.  *Bogus v. Harris Cty. Dist. Att'y*, 830 F.App'x 746, 748 (5th Cir. 2020).  If the alleged deprivation includes a conspiracy to effect an unlawful arrest, the plaintiff "must demonstrate the existence of a 'preconceived plan' for the authorities to arrest the person without investigation, 'merely because he was designated for arrest by the [non-state actor].'"  *Glotfelty v. Karas*, 512 F.App'x 409, 415 (5th Cir. 2013) (quoting *Sims v. Jefferson Downs Racing Ass'n*, 778 F.2d 1068, 1078-79 (5th Cir. 1985)).

C. Bowman, Schutzman, and Walker make no argument concerning whether Hassen suffered a deprivation of her constitutional rights.  Rather, they contend that there are no "specific factual allegations of a conspiracy with government actors."  [Doc. No. 29, pp. 6].  A review of the controlling pleadings reveals that Hassen's allegations are conclusory at best.  The blanket accusation that "[a]n understanding and agreement was made by and between Defendants to falsely detain and involuntarily hospitalize" Hassen, [Doc. No. 1, p. 23], is unsupported by the facts required to move it into the realm of plausibility.  Nowhere does Hassen make any allegations concerning the details of the supposed agreement shared by Defendants.  There are no allegations about which specific Defendants were parties to the agreement, when the agreement was conceived, or how the conspirators planned to execute the agreement.  Hassen has thus failed to

allege the existence of an agreement between the public and private defendants.  Hassen's pleadings thus failed to plausibly establish an agreement as a predicate for § 1983 liability to attach to non-state actors.

Hassen argues in her opposition that C. Bowman, Schutzman, and Walker "conspired to have [Hassen's] nursing license and liberty revoked by making defamatory statements to the Police Defendants as well as the Louisiana State Board of Nursing."  [Doc. No. 56-1, p. 14].  While this contention is not a controlling pleading, it does illustrate Hassen's apparent misunderstanding of her burden: to plead a § 1983 claim against the non-state actors, she must sufficiently allege that they conspired with state actors, not among themselves.  Relatedly, Plaintiff contends that the Defendant Officers "illegally allowed the defamatory statements" made by Schutzman and Walker to justify subjecting Hassen to a medical evaluation.  *Id.*  This argument fails to advance the inquiry concerning non-state actor § 1983 liability: the existence of a conspiracy between public and private actors.  Even if the defendant-officers had illegally relied on defamatory statements, there must be an agreement in place with the private defendants for liability to attach to these individuals.  Additionally, the fact that the Defendant Officers spoke with Schutzman and Walker, in addition to Hassen, tends to indicate that they did in fact carry out a fulsome inquiry as opposed to summarily arresting Hassen without taking any investigatory steps.

Accordingly, C. Bowman, Schutzman, and Walker's motion [Doc. No. 27] is granted to the extent it challenges the § 1983 claims against them, and those claims are dismissed with prejudice.

## VI.    False Arrest Claim

Hassen's first standalone state law claim is for false arrest predicated on "hospitalization against her will without proper legal authority, legal justification, or probable cause."  [Doc. No. 1, pp. 17-18].  This claim is brought against Rogers, Wood, Loyd, Richard, and Dr. Belue.  *Id.*  The

Defendant Officers argue that they are entitled to qualified and statutory immunity from the claim [Doc. No. 7-1, pp. 27-28], while Dr. Belue contends that he is entitled to statutory immunity in the event Hassen did not fail to state a claim.  [Doc. No. 41-1, p. 9].

The Complaint does not specify whether Hassen has brought a claim for false arrest pursuant to the Louisiana Constitution or state tort law.  Hassen herself is non-committal on this point, arguing that she has stated a claim under both authorities.  *See* [Doc. No. 45-1, p. 29-31].  Out of an abundance of caution, the matter will be analyzed under both laws.

Per the Louisiana Constitution, "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable . . . seizures."  LA. CONST., art. I, § 5.  The related tort of false arrest occurs when "one arrests and restrains another against his will without a warrant or other statutory authority."  *Kyle v. City of New Orleans*, 353 So.2d 969, 971 (La. 1977).  The tort, also called false imprisonment, has two requirements: (1) detention of a person and (2) the detention was unlawful.  *Herrera v. First Nat. Ins. Co. of America*, 194 So.3d 807, 813 (La.App. 1 Cir. 6/3/16).  Plaintiffs bear the burden of proving the arrest was made without color of legal authority.  *O'Conner v. Hammond Police Dep't*, 439 So.2d 558, 560 (La.App. 1 Cir. 10/11/83).

Concerning the invocation of qualified immunity, the Louisiana Supreme Court has held that Louisiana state officials are eligible for such immunity.  *See, e.g.*, *Moresi*, 567 So.2d at 1084-85 ("The decisions of the Supreme Court and the circuits demonstrate that the qualified immunity test covers all state and local government officers . . . ."); *see also Christian v. Fontenot*, 672 So.2d 436 (La.App. 2 Cir. 4/8/96) (citing federal cases as authority for qualified immunity ruling).

As discussed *supra* section V.d, Rogers, Wood, Loyd, and Richard had probable cause to seize Hassen and did not run afoul of her federal constitutional rights when doing so.  Furthermore,

Louisiana law permits officers to "take a person into protective custody and transport him to a treatment facility for medical evaluation." LA. REV. STAT. § 28:53(L)(1).  The Defendant Officers were acting pursuant to statutory authority when they detained Hassen.  Hassen's contention that the officers did not "personally observe" any "reasonable grounds" for her to be involuntarily committed, [Doc. No. 45-1, pp. 29-30]; *see also* LA. REV. STAT. § 28:53(L)(1), are unconvincing in light of her own pleadings.  The allegations indicate that, as a result of interviews with Schutzman, Walker, and Hassen, the Defendant Officers had knowledge at the time of Hassen's seizure that she purportedly had made threatening statements that were sufficiently threatening to merit summoning the police, was denying those statements under questioning, and had access to a firearm.  Investigatory interviews, including with Hassen, constitute personal observation of a situation and keep Rogers, Wood, Loyd, and Richard within the confines of § 28:53(L)(1).  In short, these Defendants did not run afoul of any state law and are entitled to qualified immunity.

Hassen apparently contends Dr. Belue's execution of a CEC while she was confined to the Serenity Springs facility makes him liable for false arrest.  *See* [Doc. No. 1, pp. 4-5].  Louisiana law empowers "[a]ny parish coroner" to "order a person be taken into protective custody and transported to a treatment facility or the office of the coroner for immediate examination."  LA. REV. STAT. § 28:53.2(A).  This statute provides coroners "who act in good faith to order persons to be taken into protective custody and transported for examination . . . shall not be civilly liable for damages to such person resulting from those actions."  *Id.* at § 28:53.2(E).  As discussed *supra*, Hassen's allegations are insufficient to establish that Dr. Belue's issuance of the CEC was without legal authority.  Furthermore, allegations that Dr. Belue's actions were intentional, malicious, and unsupported by probable cause, *see* [Doc. No. 1, p. 5], are conclusory and fail to plausibly state that Dr. Belue did not act in good faith.  The allegations indicate that Dr. Belue both acted lawfully

and is entitled to immunity under § 28:53.2(E).  On these same grounds, Belue is entitled to immunity under Louisiana Revised Statutes §§ 9:2798.1 and 13:5713, *see supra* section V.b.ii, as his issuance of the CEC was a discretionary act properly taken within the course of his lawful powers.

Rogers, Wood, Loyd, Richard, and Dr. Belue's motions [Doc. Nos. 7, 41] are granted to the extent they seek immunity from, and dismissal of, Hassen's false arrest claims, and these claims are dismissed with prejudice.

## VII.  State Failure to Intervene Claim

Hassen's next state law claim is predicated on certain Defendants' alleged failure to intervene.  [Doc. No. 1, pp. 18-19].  While Plaintiff does not name specific defendants in relation to this claim, she does indicate that it was "the employees, agents, and officers of the City of Ruston Police Department and Lincoln Parish coroner's office" who are liable.  *Id.* at p. 18.  The Court construes these claims to be brought against Rogers, Wood, Loyd, Richard, and Dr. Belue.  The Defendant Officers argue that Hassen has failed to state a claim upon which relief can be granted. [Doc. No. 7-1, pp. 28-29].  Dr. Belue makes the same argument and invokes statutory immunity. [Doc. No. 41-1, p. 9].

The undersigned was unable to identify any recognition of a civil claim for failure to intervene in an ongoing violation of constitutional or statutory rights under Louisiana law, nor has Hassen pointed to any such authority.[18]  This failure is not remedied by Hassen's invocation of the federal failure to intervene test in her opposition to the Defendant Officers' motion.  *See* [Doc. No. 45-1, pp. 31-32].  The cases cited in support of her contention that "liability premised on a failure

---

[18] A review of Louisiana case law indicates that state courts primarily take an interest in a party's "failure to intervene" in the context of civil procedure.  *See, e.g.*, *Roche v. Big Moose Oil Field Truck Serv.*, 381 So.2d 396 (La. 1980).

to intervene extends beyond claims of excessive force," [Doc. No. 45-1, p. 32], are from the Sixth Circuit and provide only persuasive authority in this, the Fifth Circuit.  Furthermore, these cases concern federal claims, which have no bearing on Hassen's state law claims.  In the same opposition memo, Hassen also cites Louisiana Revised Statute § 14:134 as authority for her failure to intervene claim.  *Id.* at pp. 32-33.  However, this is a criminal statute and contains no provision for civil remedy.  *See* LA. REV. STAT. § 14:134.  The controlling pleadings do not invoke this statute, nor do the pleadings indicate that Hassen seeks to civilly enforce a criminal statute.  It is inappropriate to imply that Plaintiff's claim styled as a state law failure to intervene claim putatively arises under § 14:134.  As there does not appear to be a failure to intervene tort claim under Louisiana law – and Hassen has not provided any authority to find otherwise – then Hassen fails to state a claim upon which relief can be granted.

Accordingly, Rogers, Wood, Loyd, Richard, and Dr. Belue's motions [Doc. Nos. 7, 41] are granted to the extent they challenge Hassen's state law failure to intervene claims against them, and the claims are dismissed with prejudice.

## VIII.  Abuse of Process Claim

Hassen's third state law claim is against Rogers, Wood, Loyd, Richard, Belue, and the City for abuse of process.  [Doc. No. 1, pp. 19-20].  The City and Defendant Officers argue that Hassen has failed to state an abuse of process claim.  [Doc. No. 7-1, pp. 29-30].  Belue invokes statutory immunities.  [Doc. No. 41-1, p. 9].

Under Louisiana law, plaintiffs alleging abuse of process must plead "(1) the existence of an ulterior purpose and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding."  *Foster v. Bias*, 358 So.3d 520, 356 (La.App. 1 Cir. 12/22/22).  If the process at issue is "used to redress a legal wrong, the person who invoked the legal process

cannot be said to have committed any tort, regardless of whether his motive was vicious or vindictive." *Id.* Conversely, when an individual invokes the process "to attain some collateral objective, outside the scope of the operation of the process employed, a tort arises." *Id.* In other words, the tort occurs when "a result not lawfully or properly obtainable under it is attempted to be secured." *Ioppolo v. Rumana*, 581 F.App'x 321, 326 (5th Cir. 2014) (quoting *Almerico v. Dale*, 927 So.2d 586, 594 (La.App. 5 Cir. 3/28/06).

Here, Hassen has failed to sufficiently allege that any of the defendants had an "ulterior motive" when she was detained and involuntarily hospitalized. The allegations concerning Defendants' putative motives are conclusory and amount to little more than recitals of the elements of the abuse of process test. For instance, Hassen alleges that "Defendants acted with an ulterior purpose not in the regular process of involuntary hospitalization of a citizen by police force." [Doc. No. 1, p. 20]. As pleaded, the allegations amount to a statement that "Defendants wanted to involuntarily commit Hassen, so they did." Allegations of this tenor are insufficient to push the pleadings into the realm of plausibility. Also, abuse of process claims are typically brought as challenges to criminal prosecution or civil litigation. *See, e.g.*, *No Drama, LLC v. Caluda*, 177 So.3d 747, 752 (La.App. 5 Cir. 10/14/15) ("[A] claim for abuse of process may be asserted prior to the termination *of the litigation in which [the challenged] allegations were made*." (emphasis added)).[19] Hassen fails to state a claim for abuse of process against Rogers, Wood, Loyd, Richard, and Dr. Belue. Because there is no claim stated against the Defendant Officers, it would be improper to find that a claim has been stated against the City either. Additionally, for substantially the same reasons discussed *supra* section VI, Dr. Belue is entitled to statutory immunity under § 28:53.2(E).[20]

---

[19] Although there were proceedings at the State Board of Nursing, that proceeding is concluded.
[20] Defendant Officers and the City did not invoke statutory immunity as to this claim.

Accordingly, Rogers, Wood, Loyd, Richards, and the City's motion [Doc. No. 7] is granted to the extent they seek dismissal of Hassen's abuse of process claims, and these claims are dismissed with prejudice.  Dr. Belue's motion [Doc. No. 41] is granted to the extent it seeks immunity from the same claim, and this claim is dismissed with prejudice.

## IX.   Intentional Infliction of Emotional Distress Claim

Hassen brings a claim for intentional infliction of emotional distress ("IIED") against all Defendants.  [Doc. No. 1, p. 20].  Defendant Officers, the City, and the A Plus Medical Defendants argue that Hassen has failed to state such a claim.  [Doc. No. 7-1, pp. 30-31]; [Doc. No. 29, pp. 14-15].  Dr. Belue again argues that he is entitled to statutory immunity.  [Doc. No. 41-1, p. 9].

Under Louisiana law, plaintiffs pursuing an IIED claim must establish that (1) the defendant engaged in "extreme and outrageous conduct" (2) causing the plaintiff to suffer severe emotional distress and (3) the defendant "desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1022 (La. 2000) (quoting *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991)).  In accordance with the third factor, "[t]he conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like."  *White*, 585 So.2d at 1210.  The complained-of conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *LaBove v. Raferty*, 802 So.2d 566, 578 (La. 2001) (quoting *White*, 585 So.2d at 1209).  While there do not appear to be state-level decisions concerning IIED in the involuntary commitment context, it is clear that Louisiana courts have imposed a high bar for plaintiffs pursuing this type of claim in other contexts.  *See, e.g.*, *Perron v. Rogers*, 234 So.3d 153 (La.App.

1 Cir. 12/18/17) (holding text message from attorney to brother of deceased client, including language such as "I think you are piece of sh-t your every breath is an embarrassment to your brothers memory it should have been you and not him[,]" did not constitute IIED), *writ denied* 269 So.3d 709 (La. 2018); *Roscoe v. Hasting*, 999 So.2d 1218 (La.App. 2 Cir. 1/14/09) (holding workplace supervisor making "graphic sexual comments," "remarking on [the plaintiff's] relationship with her husband," calling the plaintiff "a b---- on numerous occasions," and allowing "co-employees to make derogatory remarks" to the plaintiff did not constitute IIED); *Biagas v. St. Landry Par. Sheriff Off.*, 132 So.2d 971 (La.App. 3 Cir. 12/11/13) (holding allegedly racist, sexist, and vulgar comments made to a plaintiff in police custody did not constitute IIED), *writ denied* 137 So.3d 15 (La. 2014); *see also Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743 (5th Cir. 2001) (finding a security officer who detained a customer matching descriptions of a shoplifting suspect was not liable for IIED).

Here, it is unclear precisely what alleged conduct gives rise to Hassen's IIED claim. Looking at the Complaint as a whole, there are no allegations to indicate that the Defendant Officers' questioning of Hassen was outrageous. During an inquiry into whether Hassen was having a mental health episode, it was necessary to ask whether she "had any homicidal thoughts or plans" or "had a firearm present on her." These questions are not beyond the pale or unduly personal in the context of a mental health investigation. As discussed *infra*, Hassen's defamation claims against C. Bowman, Walker, and Schutzman fail; it is incongruent to find that their statements were so outrageous as to be atrocious and utterly intolerable in a civilized community. Turning to the Defendant Officers' detention of Hassen, as discussed *supra*, the pleadings only establish that those Defendants acted on probable cause and complied with § 28:53(L)(1). It would again be inapposite to find that conduct sanctioned by an unchallenged state law incurred IIED

liability.  The same conclusion necessarily flows from Dr. Belue's immunity under § 28:53.2(E), as a finding that he acted in good faith precludes a finding that he acted with the intent required to support an IIED claim.  Finally, the allegations concerning any putative intent or calculation to cause severe emotional distress are conclusory.  Hassen repeatedly alleges that Defendants' actions were intentional, willful, and malicious, [Doc. No. 1, pp. 5, 9, 12-14, 16, 18-19, 23], made "with bad faith, bad motive, and bad will," *id.* at p. 6, "motivated by bad faith and ill will," *id.* at p. 11, and conducted "with an ulterior purpose."  *Id.* at p. 20.  Absent more, these allegations alone do not plausibly state that Defendants intended or calculated to inflict severe emotional distress upon Hassen.

Accordingly, the motions of the Defendant Officers, the City, and the A Plus Medical Defendants [Doc. Nos. 7, 27] are granted to the extent they seek dismissal of Hassen's intentional infliction of emotional distress claims, and these claims are dismissed with prejudice.  Dr. Belue's motion [Doc. No. 41] is granted to the extent he seeks immunity against this claim, and this claim is dismissed with prejudice.

**X.   Defamation Claim**

Hassen's next state law claim is for defamation against C. Bowman, Walker, and Schutzman.  *Id.* at pp. 21-22.  These defendants invoke "community of interest" immunity against the claim.  [Doc. No. 29, pp. 10-14].

There are four elements constituting a defamation claim under Louisiana law: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) resulting injury.  *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 674 (La. 2006).  Concerning the second element, statements may be subject to conditional or qualified privilege.  While "[i]t is impossible to reduce the scope of a conditional or

qualified privilege to any precise formula," the existence of such privilege is determined via a two-step inquiry.  *Id.* at 681.  Courts first determine whether the circumstances attending the relevant communication occasion a qualified privilege, then analyze whether that privilege was abused.  *Id.* at 682.  The second step requires that putative grounds for abuse of the privilege – "malice or lack of good faith" – be analyzed.  *Id.*  To prove abuse, a showing of knowledge or reckless disregard as to falsity is required.  *Aron v. McKesson Corp.*, No. 22-00830, 2023 WL 1426439, at *6 (W.D.La. Jan. 13, 2023) (citing *Kennedy*, 935 So.2d at 684), *report and recommendation adopted* 2023 WL 1415618 (W.D.La. Jan. 31, 2023).  The plaintiff bears the burden of showing malice and bad faith; "broad, unsubstantiated allegations" are insufficient to make this showing.  *Smith v. Our Lade of the Lake Hosp., Inc.*, 639 So.2d 730, 747 (La. 1994).

One form of conditional or qualified privilege is the public interest or community of interest privilege, which arises in circumstances where employees "communicat[e] suspected wrongful acts to officials authorized to protect the public from such acts, which, if substantiated, would implicate important community interests."  *Kennedy*, 935 So.2d at 682.  This privilege is properly invoked if the circumstances induce a correct or reasonable belief that (1) there is information that "affects a sufficiently important public interest" and (2) that interest "requires the communication of the defamatory matter to a public officer . . . who is authorized or privileged to take action if the defamatory matter is true."  *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 598).  Courts have found the privilege appropriate in cases where defendants filed a complaint with a medical professional association against a plaintiff, *Ioppolo v. Rumana*, 581 F.App'x 321 (5th Cir. 2014) (finding qualified privilege based on summary judgment record failing to establish knowing falsity of statements), incorrectly reported that a plaintiff had used counterfeit currency,

*Kennedy*, 935 So.2d 669, and incorrectly reported plaintiffs for shoplifting, resulting in their arrest. *Simon v. Variety Wholesalers, Inc.*, 788 So.2d 544 (La.App. 1 Cir. 5/11/01).

Here, C. Bowman, Walker, and Schutzman have properly invoked the qualified privilege. According to Hassen's own allegations, Schutzman and Walker purported to have information that Hassen had violent tendencies, *see* [Doc. No. 1, pp. 5, 21], information which certainly affects the public interest in avoiding violence in the workplace. As discussed *supra*, the Defendant Officers had authority under § 28:53(L)(1) to act upon this information if it were true, and the LSBN has the authority to temporarily suspend nursing licenses on a proper showing. *See id.* at p. 5.

Because the privilege is properly invoked, Hassen bears the burden to show that it was abused. In trying to meet that burden, Hassen offers only broad, unsubstantiated, and conclusory allegations. Alleging that C. Bowman, Schutzman, and Walker "knowing or recklessly made the false representation [that Hassen was] homicidal and suicidal and abuses her children" may describe a *possible* abuse of the privilege, but it fails to establish a *plausible* abuse. Hassen's other pleadings concerning the statements of C. Bowman, Schutzman, and Walker are similarly threadbare. Absent allegations substantiating the assertion that these defendants knowingly or recklessly made defamatory statements, Hassen has failed to establish that they abused the qualified privilege. Because Plaintiff has not pleaded that C. Bowman, Schutzman, and Walker abused the privilege, they are entitled to the privilege, and Plaintiff has failed to state a defamation claim against them.

Accordingly, C. Bowman, Schutzman, and Walker's motion [Doc. No. 27] is granted and the defamation claims against them are dismissed with prejudice.

XI.   **Civil Conspiracy Claim**

Hassen's next claim is for civil conspiracy, alleging that all Defendants conspired to detain her, involuntarily hospitalize her, and cause severe emotional distress while doing so.  *Id.* at p. 23. The City, Rogers, Wood, Loyd, and Richard argue that Hassen has failed to state a conspiracy claim.  [Doc. No. 7-1, pp. 32-33].  The A Plus Medical Defendants and Dr. Belue make the same argument.  [Doc. No. 29, pp. 6-8]; [Doc. No. 41-1, pp. 5-6].

Pursuant to Louisiana state law, liability may attach to those who conspire "with another person to commit an intentional or willful act."  LA. CIV. CODE art. 2324.  "The actionable element in a claim under this Article is not the conspiracy itself, but rather the tort which the conspirators agree to perpetrate and which they actually did commit in whole or in part."  *Ross*, 828 So.2d at 552 (citing *Butz*, 710 So.2d at 1174).  A review of *Butz* makes clear that recovery under this statute requires plaintiffs to "prove that an agreement existed to commit an illegal or tortious act which resulted in the plaintiff's injury."  *Butz*, 710 So.2d at 1174.

As established *supra*, Hassen has failed to plead that an agreement existed between the A Plus Medical Defendants, the Defendant Officers, and Dr. Belue.  Her pleadings concerning putative agreement among any groupings of the Defendants are similarly deficient.  Conclusory pleadings such as "[a]n understanding was made by and between Defendants to falsely detain and involuntarily hospitalized [Hassen]," Complaint [Doc. No. 1, p. 23], are patently insufficient to survive a motion to dismiss.  Absent allegations concerning key indicators such as who specifically was party to the purported agreement, when the agreement was made, the terms of the agreement, why the agreement was sought, and how the agreement was to be implemented, it would be inappropriate for the undersigned to find that Hassen has plausibly pleaded a conspiracy claim.

Accordingly, the motions of the City, Police Defendants, A Plus Medical Defendants, and Dr. Belue [Doc. Nos. 7, 27, 41] are granted to the extent they seek dismissal of Hassen's conspiracy claim and these claims are dismissed with prejudice.

## XII.   Negligent Hiring, Training, and Supervision Claim

Hassen's final claim is against the City for negligent hiring, training, and supervision of the Defendant Officers.  *Id.* at pp. 23-25.  The City argues that Hassen fails to state such a claim. [Doc. No. 7-1, p. 33].

While this claim is styled as arising under "Louisiana State Law," *see* [Doc. No. 1, p. 23], the pleadings clearly indicate that the claim rests on § 1983.  *See id.* at p. 25 ("As a result of her injuries, Ms. Hassen is entitled to recover all damages allowable for a violation of 42 U.S.C. § 1983 . . . .").  Indeed, the pleadings associated with this claim are nearly identical to those associated with Plaintiff's *Monell* claim.  *Compare id.* at pp. 14-17 *with id.* at pp. 23-25.  Hassen's opposition briefing appears to confirm that the negligent hiring, training, and supervision claim is coextensive with her § 1983 *Monell* claim.  *See* [Doc. No. 45-1, p. 37] ("For the same reasons outlined in the Plaintiff's analysis of Plaintiff's [*Monell*] claim, Plaintiff's negligent hiring, training, and/or supervision claims . . . should not be dismissed.").  That claim is deficient as it is supported only by conclusory allegations concerning purported municipal policies and practices. For the same reason, Hassen's negligent hiring, training, and supervision claim fails.

The Complaint also contains allegations of a similar claim against the Lincoln Parish Coroner's Office for its employment of Dr. Belue.  *See* Complaint [Doc. No. 1, pp. 25-27].  The Lincoln Parish Coroner's Office is not a named defendant in this action.  This putative claim thus merits dismissal.  In any event, this putative claim is deficient for the same reasons as the negligent hiring claim against the City.

Accordingly, the City's motion [Doc. No. 7] is granted to the extent it seeks dismissal of the negligent hiring, training, and supervision claim, and the claim is dismissed with prejudice.

## XIII.    CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Rogers, Wood, Loyd, Richards, and the City's motion to dismiss [Doc. No. 7] are **GRANTED IN PART** and **DENIED IN PART**, for reasons consistent with this opinion, and that all claims against these Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that C. Bowman, H. Bowman, Schutzman, Walker, and A Plus Medical's motion to dismiss [Doc. No. 27] is **GRANTED** and that all claims against these Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Dr. Belue and Woods' motion to dismiss [Doc. No. 41] is **GRANTED IN PART** and **DENIED IN PART,** for reasons consistent with this opinion, and that all claims against Dr. Belue and Woods are **DISMISSED WITH PREJUDICE**

**IT IS FURTHER ORDERED** that the Court hereby gives Notice that it intends to *sua sponte* enter judgment in favor of Dr. Nwude, dismissing Hassen's claims against him with prejudice, and granting his Motion [Doc. No. 39]. Hassen has twenty-one days (21) to respond to this notice. If no reply is filed, the Court will enter judgment in favor of Dr. Nwude.

MONROE, LOUISIANA, this 24th day of June 2024.

_____
        TERRY A. DOUGHTY
   UNITED STATES DISTRICT JUDGE