c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| LABRITTANY HASSEN, Plaintiff | CIVIL DOCKET NO. 3:23-CV-01027 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| CHRIS BOWMAN ET AL, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant CLHG-Ruston, LLC dba Northern Louisiana Medical Center ("NLMC"). ECF No. 101. NLMC argues that Plaintiff LaBrittany Hassen ("Hassen") has failed to assert a viable claim against NLMC. Rather, NLMC claims that Hassen's only allegations against it relate to its employment of two former Defendants, both of whom have been dismissed from this suit with prejudice. ECF No. 101 at 1. NLMC also moves for reconsideration of the Order (ECF No. 114) granting Hassen's motion to amend its Original Complaint.

For the reasons set forth herein, NLMC's Motion to Dismiss (ECF No. 101) should be GRANTED. And because the Court found no manifest error of law or fact in its prior ruling allowing Plaintiff leave to amend, NLMC's Motion for Reconsideration (ECF No. 114) should be DENIED.

1

I. <u>Background & Procedural History</u>

Hassen filed her Original Complaint on August 2, 2023, naming as Defendants: NLMC; two NLMC employees, Ugochukwu Nwude, M.D. ("Dr. Nwude"), and Baylee Gray, R.N. ("Nurse Gray"), and numerous others, including Ms. Hassen's previous employer, the City of Ruston, multiple police officers, and the Lincoln Parish Coroner. Hassen seeks injunctive relief and damages under 42 U.S.C. § 1983 for Defendants' alleged failure to intervene, false arrest, abuse of process, intentional infliction of emotional distress ("IIED"), defamation, civil conspiracy, and negligent hiring. *Id.* at pp. 13-14, 17-27.

Hassen claims that she was improperly detained under a Physician's Emergency Certificate ("PEC") and a Coroner's Emergency Certificate ("CEC"). Her detention resulted in the temporary suspension of her nursing license and the disruption of her career.

Nurse Gray was dismissed from this suit because Hassen failed to effectuate service upon her. ECF No. 86. The Court since has dismissed all the defendants except NLMC with prejudice. ECF No. 89.

NLMC filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that no substantive allegations had been made against it in the Original Complaint aside from its having employed Dr. Nwude and Nurse Gray, both of whom had been dismissed from the suit. ECF No. 101 at 1. In response, Hassen filed an Opposition to NLMC's Motion to Dismiss as well as a Motion to Amend the Complaint to cure

2

any deficiency alleged by NLMC. ECF Nos. 109 and No. 110. NLMC replied, arguing that the Amended Complaint did not cure any deficiency and that no substantive claim against NLMC existed due to the dismissal of Dr. Nwude and Nurse Gray. ECF No. 111 at 2. The Court granted the Motion to Amend (ECF No. 112), and the Amended Complaint was filed. ECF No. 113. Hassen seeks relief against NLMC for its alleged failure to intervene, abuse of process, intentional infliction of emotional distress ("IIED"), defamation and negligent hiring, in addition to relief under 42 U.S.C. § 1983. ECF No. 113 at pp. 11-17.

NLMC has also filed a corrected Motion for Reconsideration of the Order granting Hassen leave to Amend. ECF No. 114. The motions to reconsider and dismiss remain before the Court for disposition.

II. <u>Law and Analysis</u>

A. <u>Motion for Reconsideration of Order Granting Leave to Amend Complaint</u>

No Federal Rule of Civil Procedure specifically applies to a motion to reconsider. *Cressionnie v. Hample*, 184 Fed. App'x. 366, 369 (5th Cir. 2006); *Shepard v. Int'l Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004). However, a district court may reconsider an interlocutory order pursuant to Federal Rule of Civil Procedure 54(b), which allows courts to revise "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... before the entry of judgment." Fed. R. Civ. P. 54(b). The Court also possesses the inherent procedural authority to reconsider an interlocutory

order for any reason it deems sufficient. *Stoffels ex rel. SBC Telephone Concession Plan v. SBC Communications, Inc.*, 677 F.3d 720, 726–28 (5th Cir. 2012).

This Court typically evaluates motions to reconsider under the standards governing Rule 59(e) motions to alter or amend a final judgment. *See Leong v. Cellco P'ship*, CIV.A. 12–0711, 2013 WL 4009320 (W.D. La. July 31, 2013). And so construed, the Court has broad discretion in deciding these motions. *Templet v. HydroChem Inc.*, 367 F.3d 473, 482–83 (5th Cir. 2004).[1] "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003)) (other citations and quotation marks omitted). "Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law." *Schiller*, 342 F.3d at 567-68 (citation omitted).

Here, NLMC argues first that Hassen's Motion to Amend was not in proper form under Local Rule 7.6, because she included no statement that she had presented the proposed amendment to all parties. Hassen does not contest this deficiency. Furthermore, NLMC argues that the Amended Complaint in no way cures the defects in the Original Complaint detailed in NLMC's Motion to Dismiss. NLMC does not,

---

[1] Altering or amending a judgment under Rule 59(e) is an "extraordinary remedy" used infrequently, and only in specific circumstances. *Templet*, 367 F.3d at 479.

4

however, present any arguments regarding the enumerated circumstances under which Rule 59(e) would merit reconsideration.

NLMC correctly identifies deficiencies in Hassen's motion for leave to amend. *See* W. D. La. L. R. 7.6. But this deficiency was neither prejudicial nor substantive. As such, the Court accepted the amendment and has been able to evaluate it for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Given Fed. R. Civ. P. 15(a)'s mandate that leave to amend "be freely given when justice so requires," the procedural deficiencies in Hassen's motion did not rise to the level of a manifest error of law. In light of the foregoing, NLMC's Motion for Reconsideration is **DENIED.**

B. Rule 12(b)(6) Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss all or part of a complaint for "failure to state a claim upon which relief can be granted." But a complaint should not be dismissed "if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation omitted).

A claim is "facially plausible" when the facts alleged "allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Arnold*

5

*v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (internal citation and quotation omitted). Factual allegations need not be detailed but must "raise a right to relief above the speculative level." *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 496 (5th Cir. 2020). Allegations that are "merely consistent with" liability are insufficient. *See Ashcroft*, 556 U.S. at 678–79.

In deciding a Rule 12(b)(6) motion, a court must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Serrano*, 975 F.3d at 496. However, a court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (internal citations and quotations omitted).

### 1. 42 U.S.C. § 1983

Section 1983 provides a remedy for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law. *See Lugar v. Edmondson Oil Co., Inc.*, 475 U.S. 922, 937 (1982). Purely private conduct, no matter how wrongful, is not within the protective orbit of § 1983. *See Shelley v. Kraemer*, 334 U.S. 1, 13 (1948). If the person who caused the alleged deprivation is a non-state actor, the plaintiff must allege "(1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of a constitutional rights." *Bogus v. Harris Cty. Dist. Att'y*, 830 F.App'x 746, 748 (5th Cir. 2020).

Here, Hassen alleges that Dr. Ugochukwu and Nurse Gray, as agents of NLMC, "acted in concert with state actors by making false reports to the Ruston Police Department and the Louisiana State Board of Nurses." ECF No. 113 at 12. She argues that they were "clothed with the authority of the state and were acting thereunder, either as state law enforcement or as private citizens acting in concert with state officials." ECF No. 113 at 13.

However, the Louisiana Secretary of State lists NLMC as a Louisiana LLC, and the Amended Complaint contains no factual allegations indicating that NLMC is a state actor. Additionally, the Complaint contains no facts which would demonstrate a conspiracy or agreement between NLMC and a state actor to commit an illegal act or deprive Hassen of her constitutional rights.

Additionally, because respondeat superior and vicarious liability are inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *See Iqbal,* 556 U.S. 662, 676 (2009); *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691 (1978); *Alderson v. Concordia Parish Correctional Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (citation omitted). Hassen's claims arise from the alleged actions of Dr. Nwude and Nurse Gray as agents of NLMC. However, Hassen asserts no independent conduct on the part of NLMC which would entitle her to relief under § 1983. Accordingly, Hassen has failed to allege sufficient facts to state a claim for relief on this Count.

7

### 2. Failure to Intervene

Hassen alleges that she was involuntarily hospitalized against her will without proper legal authority, legal justification, or probable cause. Hassen also claims that the employees, agents, and officers of NLMC knew, or reasonably should have known, that her hospitalization was improper but did not intervene. ECF No. 113 at 13. She further alleges that NLMC, through its employees, acted intentionally, maliciously, willfully, deliberately, carelessly, and/or recklessly. *Id.*

However, "failure to intervene" is not a cognizable claim under Louisiana law. Hassen has provided no statutory or jurisprudential authority in support of this claim which would demonstrate otherwise. As such, Hassen has failed to state a viable claim for failure to intervene.

### 3. Louisiana State Law Abuse of Process

Hassen alleges that NLMC "caused Ms. Hassen to be involuntarily hospitalized based on false accusations that [she] was homicidal and suicidal." ECF No. 113 at 13. She further alleges that NLMC "knew that no probable cause existed to support the claims brought against her, but it intentionally and maliciously pursued involuntary hospitalization on the false claims" against her, acting with an "ulterior purpose not in the regular process of involuntary hospitalization of a citizen by police force." *Id.* at 14.

Abuse of process involves the misuse of a process whereby a party attempts to obtain some result not proper under law. *Panepinto v. Panepinto*, 384 So.3d 1089, 1094 (La. App. 5 Cir. 3/20/24) (internal citations omitted). An abuse of process claim

has two essential elements: (1) the existence of an ulterior purpose, and; (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding. *Id.* Louisiana courts have described these elements as follows:

> Ulterior purpose is similar to the concept of 'malice,' but is a much more demanding test which would not be met by a showing of lack of knowledge or other technical types of malice, but which is only met when the officer is acting for a specific purpose not authorized by law. The second criteria, improper use of process, refers to a failure to comply with the proper procedures or rules set out by law for conducting official actions.

*Taylor v. State*, 617 So.2d 1198, 1205-1206 (La. App. 3 Cir. 3/31/93).

In this case, the Amended Complaint summarily states that NLMC had an ulterior purpose beyond the regular process of involuntarily hospitalization. But Hassen offers no factual allegations to support this conclusion-nothing about NLMC's ulterior motives, or how NLMC's employees knew her hospitalization was improper.

Rather, Hassen alleges that she was examined by Dr. Nwude and Nurse Gray and questioned as to whether she experienced any homicidal or suicidal ideation. She denied both. Dr. Nwude noted her denial but went on to issue the PEC based on the statements of Deputy Chief Stephen Rogers[2] and various co-workers of Hassen. She further alleges discrepancies in her medical records regarding the reported time her evaluation was conducted, and claims that other hospital policies were violated, including when hospital staff: allowed her to remain in possession of her clothing; held her in a room with other patients, cords, and a medication cart; and brought her a phone charger. These facts, she argues, show that the hospital staff did not

---

[2] Deputy Chief Rogers was a named defendant in the Original Complaint. Hassen alleged he was present at the meeting with her employer, escorted her to NLMC and requested a PEC be issued. Hassen's claims against him were dismissed with prejudice. ECF No. 89.

genuinely believe she posed a danger to herself or others. Still, this account of events, without more, simply does not establish a claim for abuse of process in the absence of facts to support an improper ulterior motive on the part of Defendant. Hassen has not pleaded facts sufficient to support this claim.[3]

### 4. Louisiana State Law Intentional Infliction of Emotional Distress

Hassen claims that "the extreme and outrageous conduct of Defendant Northern Louisiana Medical Center, as well as its agents, servants, and employees caused [her] to suffer severe emotional distress." ECF 113 at 14.

To establish a claim for IIED under Louisiana law, the plaintiff must show that "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *Nicholas v.*

---

[3] Under La. R.S. 28:53 (N)(1),
> "[p]ublic and private general hospitals and their personnel who provide services in good faith for commitments defined in this Part shall not be liable for damages suffered by the patient as a result of the commitment or damages caused by the patient during the term of the commitment, unless the damage or injury was caused by willful or wanton negligence or gross misconduct. This limitation of liability shall only apply to public and private general hospital personnel who within the preceding twelve-month period have received appropriate training in nonviolent crisis intervention and such training has been documented in their personnel files. The training shall be provided by an instructor who has attended a course in crisis intervention taught by a certified instructor."

A similar limitation of liability is found under R.S. 28:63. Here, Hassen's allegations are insufficient to establish that NLMC or its staff acted with willful or wanton negligence toward her or committed any gross misconduct. However, the absence of information in the record regarding whether NLMC's staff received the required crisis intervention training prevents the Court from evaluating the applicability of immunity in this case.

10

*Allstate Ins. Co.*, 765 So.2d 1017, 1022 (La. 8/31/2000) quoting *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 9/9/1991). In *White,* the Louisiana Supreme Court noted that "[t]he conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." *White*, 585 So.2d at 1210. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* at 1209.

Hassen has failed to allege any specific facts which establish extreme or outrageous conduct by NLMC or any of its employees. Likewise, Hassen asserts no specific facts indicating that hospital staff desired to inflict severe emotional distress or knew that severe emotional distress was certain to result. Despite Hassen's denial of homicidal or suicidal ideation, Dr. Nwude relied on the statements made to him by the officers who escorted her to the hospital, and by her co-workers, in issuing the PEC. ECF No. 113 at 6. Staff allowed her to keep her clothing and effects, and loaned her a cell phone charger, which she alleges is against hospital policies. *Id.* She additionally points to alleged HIPPA violations where the House Supervisor at NLMC spoke with Ms. Hassen's friend and Nurse Gray spoke with Ms. Hassen's mother. *Id.* at 7. None of these allegations reaches the level of atrocious and utterly intolerable conduct sufficient to state a claim for IIED.

11

### 5. Louisiana State Law Defamation

Hassen alleges that NLMC "knowingly or recklessly made false representations to police officers and LSBN" through Dr. Nwude's issuance of the PEC and the creation of medical records based on allegedly false accusations. ECF No. 113 at 15. She also claims NLMC defamed her when Nurse Gray spoke with Hassen's mother about the PEC without her authorization. *Id.*

Defamation is a tort involving the invasion of a person's interest in his or her reputation and good name. *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 674 (La. 7/10/2006). Defamation requires proof of four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) resulting injury. *Id.* Fault generally means malice, either actual or implied. *Johnson v. Purpera*, 320 So. 3d 374, 387 (La. 5/13/21). "Thus, in order to prevail on a defamation claim, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages." *Costello v. Hardy*, 864 So.2d 129, 139-140 (La. 1/21/04) citing *Trentecosta v. Beck*, 703 So.2d 552, 559 (La.10/21/97).

Defamatory words are, by definition, "words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule." *Costello v. Hardy*, 864 So.2d at 139 citing *Fitzgerald v. Tucker*, 737 So.2d 706, 716 (La.6/29/99).

Even when a plaintiff makes a prima facie showing of the essential elements of defamation, recovery may be precluded if the defendant shows either that the statement was true, or that the statement was protected by a privilege. *Costello*, 864 So.2d at 141. A conditional or qualified privilege "arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate." *Kennedy v. Sheriff of East Baton Rouge*, 935 So.2d 669, 681-82 (La. 7/10/06). The elements of a conditional privilege are: (1) good faith; (2) an interest to be upheld; (3) a statement limited in scope to that interest; (4) a proper occasion for the communication of the statement; and (5) publication in a proper manner and to proper parties only. *See Conner v. Taylor*, 2015 WL5515608, p.4 (La. App. 1 Cir. 9/18/15; *Kennedy*, 935 So.2d at 682.

Courts must follow a two-step process in determining whether a conditional privilege exists. First, a court must determine whether the attending circumstances of a communication occasion a qualified privilege. Second, a court must determine whether the privilege was abused, which requires that the grounds for abuse, such as malice or lack of good faith, be examined. *Kennedy*, 935 So.2d at 682. To prove abuse, plaintiff must show that the defendant/publisher knew the defamatory statements to be false, or acted in reckless disregard as to their falsity. *Kennedy*, 935 So.2d at 687. To establish reckless disregard, a plaintiff must prove that the publication was deliberately falsified, published despite the defendant's awareness of

13

probable falsity, or published when the defendant in fact entertained serious doubts as to the truth of his publication. *Kennedy*, 935 So.2d at 688.

In *Conner*, the Louisiana First Circuit Court of Appeals considered the issue of publication in similar circumstances. *Conner v. Taylor*, 2015 WL5515608 (La. App. 1 Cir. 9/18/15). The court found that a consultation report prepared by a psychiatrist during plaintiff's hospital stay, which was placed into the plaintiff's medical records file, was entitled to a qualified privilege. *Id.* at 4. The court further found that even if the psychiatrist had had ill motives toward the plaintiff when rendering the report, the defamation claim would fail in absence of evidence that the statements were false, known to be false or that the doctor had acted with reckless disregard to truth of statements. *Id.* at 5.

Here, even crediting Hassen's claims their statements made about her alleged ideations were false, Hassen has failed to establish fault. The Amended Complaint contains only conclusory allegations that NLMC and its employees knowingly or recklessly made false statements to third parties and that such actions were "actually or impliedly malicious." ECF No. 113 at 15-16.

Furthermore, the facts alleged in the Amended Complaint indicate that the limited publication of statements regarding Hassen's mental state are likely entitled to a qualified privilege. The alleged publications were made to police officers and Hassen's mother, and in medical records. Treating medical providers clearly have an interest in this information to properly care for patients admitted to the hospital. The

statements appear limited in scope to Hassen's medical treatment and arose in the proper context. Hassen puts forth no facts indicating bad faith.

Because the publications at issue are subject to a qualified privilege, Hassen bears the burden of demonstrating abuse of that privilege. Again, there are only threadbare allegations as to malice or bad faith. Absent more substantive allegations Hassen has failed to overcome the qualified privilege.

### 6. Louisiana State Law Negligent Hiring, Training or Supervision

Finally, Hassen alleges that NLMC failed to properly screen, hire, train, supervise, and control its agents and employees, including Dr. Ugochukwu and Nurse Gray. ECF 113 at pp. 17. She prefaces this allegation by reiterating her position that NLMC is a state actor. *Id.*

Louisiana jurisprudence makes clear that an employer can only be liable under theories of negligent hiring, training, or supervision if the employee is at fault, and that the employer cannot be liable if the employee is not at fault. See *Martin v. Thomas*, 346 So.3d 238, 247-248 (La. 6/29/22). As discussed at length, Hassen has failed to adequately state a cause of action against Dr. Nwude and Nurse Gray. Therefore, Hassen cannot assert a viable negligent hiring claim.

### III. Conclusion

For the reasons given, **IT IS RECOMMENDED** that NLMC's Motion to Dismiss (ECF No. 101) be **GRANTED.**

**IT IS FURTHER RECOMMENDED** that NLMC's Motion for Reconsideration (ECF No. 114) be **DENIED.**

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Tuesday, May 27, 2025.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE